FILED

2024 May-07  AM 08:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CARLO CRESPO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  5:23-cv-01421-HNJ |
| | ) | |
| SMART HEALTH DIAGNASTICS COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

On November 9, 2023, Defendants Smart Health Diagnostics Company (hereinafter "Smart Health") and Matthew Nuñez filed a Motion to Dismiss or, Alternatively, to Transfer Venue.  (Doc. 4).  Based upon review of the motion and associated filings, the court **DISMISSES** Count IV, an unjust enrichment claim against Smart Health only, for failure to state a claim.  The court will maintain the other challenged claims.  As for the venue challenges, the United States District Court for the Northern District of Alabama constitutes a proper venue for all remaining claims, and thus, the court declines to transfer the case to the United States District Court for the Central District of California.

## BACKGROUND

On September 7, 2023, Plaintiff Carlo Crespo filed his Complaint in the Circuit Court of Madison County, Alabama, concerning "two [allegedly unpaid] loans …

Crespo made to Defendants—a $150,000 loan to SmartHealth [sic] and a $110,000 loan to SmartHealth personally guaranteed by Mr. Nuñez." (Doc. 11 at 1; doc. 1-1). Specifically, the Complaint alleged (I) breach of contract against Smart Health in relation to a written $150,000 Loan Agreement (attached to the Complaint as Exhibit A), (II) breach of contract against Smart Health in relation to the $110,000 loan, (III) breach of guaranty against Nuñez in relation to the $110,000 loan, (IV) unjust enrichment against Smart Health in relation to the $150,000 loan, and (V) unjust enrichment against Smart Health and Nuñez in relation to the $110,000 loan. (Doc. 1-1). On October 20, 2023, Defendants timely removed the case to this court "without conceding … the propriety of venue." (Doc. 1 at 1).

Subsequently, Defendants filed a Motion to Dismiss or, Alternatively, to Transfer Venue. (Doc. 4; doc. 13). Defendants move to dismiss counts II, III, IV, and V for failure to state a claim for relief. In particular, Defendants argue Crespo does not properly allege breach of contract or breach of guaranty as to the $110,000 loan because the Complaint lacks sufficiently specific allegations to render those claims plausible. (Doc. 4 at 5-6; doc. 13 at 1-3). To this end, Defendants would require Crespo to attach a written contract to his Complaint or cite precise language from the contract. In addition, Defendants claim Crespo's unjust enrichment claim as to the $150,000 loan constitutes an impermissible alternative claim due to the presence of an undisputed and valid Loan Agreement. (Doc. 4 at 7-8; doc. 13 at 4-6). Defendants also contend the court should dismiss all claims pertaining to the $110,000 loan because extrinsic

evidence demonstrates Crespo transferred the funds to Catalyst Bioholdings, LLC (hereinafter "Catalyst"), not Smart Health.  (Doc. 4 at 5; doc. 13 at 7).  Finally, Defendants claim the $110,000 loan agreement, if it reflects an oral contract, violates the statute of frauds.  (Doc. 4 at 7; doc. 13 at 3-4).

Crespo contends all claims, when examined on the face of the Complaint, meet the plausibility requirement as detailed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  (Doc. 11 at 2-9).

In addition, Defendants move to transfer the case to the Central District of California, Southern Division.  (Doc. 4 at 9; doc. 13 at 7).  In support, Defendants cite the following paragraph—containing a forum selection provision and multiple waiver provisions—in the $150,000 Loan Agreement:

> **14.    Governing Law; Jurisdiction; Consent to Service of Process; Waiver of Jury Trial.**  … Borrower hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Superior Court of the State of California sitting in Irvine, California and of the United States District Court of the Central District of California, and any California appellate court from any thereof, in any action or proceeding arising out of this Agreement, or for recognition or enforcement of any judgment relating thereto or arising therefrom, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be exclusively heard and determined in such California State court or, to the extent permitted by applicable law, in such California federal court. … Nothing in this Agreement shall affect any right that Lender may otherwise have to bring any action or proceeding relating to this Agreement against Borrower or its properties in the courts of any jurisdiction. Borrower hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any court

referred to in this Section 14. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of any purported inconvenient forum to the maintenance of such action or proceeding in any such court. …

(Doc. 1-1 at 22). Defendants claim Paragraph 14's forum selection provision binds both parties and explicitly lodges venue for Counts I and IV in California. (Doc. 4 at 9-12; doc. 13 at 7-10). In response, Crespo claims the Loan Agreement's quoted language binds only the Borrower, not the Lender, to a California venue. (Doc. 11 at 9-11). Moreover, Defendants deem venue improper in the Northern District of Alabama as to Counts II, III, and V because no substantial part of the events regarding those claims occurred in Alabama. (Doc. 4 at 12-14; doc. 13 at 10-11). Crespo argues the Loan Agreement permits him to bring claims relating to the Agreement in any venue, and he further contends a substantial part of the events concerning the applicable claims took place in Alabama. (Doc. 11 at 11-13).

Finally, Defendants move to transfer the case to California based on the doctrine of *forum non conveniens* because splitting claims between two separate courts would result in needless piecemeal litigation. (Doc. 4 at 14-15; doc. 13 at 11). Crespo responds that the court should extend deference to the plaintiff's chosen venue. (Doc. 11 at 13-15).

## ANALYSIS

## I.    FAILURE TO STATE A CLAIM CONTENTIONS

Federal Rule of Civil Procedure 8, governing pleading, calls for a short and plain statement of a claim, which, if established, entitles the pleader to relief. *See Dees v.*

*Lamar*, No. 2:20-cv-1326-LSC-GMB, 2020 WL 13750276, at *2 (N.D. Ala. Nov. 30, 2020) (noting Rule 8(a)(1) requires a plaintiff to "give the defendant fair notice of what the . . .claim is and the grounds upon which it rests").  Relatedly, Federal Rule of Civil Procedure Rule 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim for which relief may be granted.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss.  First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue.  *Id.* at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679.  Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action.  *Id.* at 678 (citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor.  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements.  *Iqbal*, 556 U.S. at 678.  Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court

5

"to draw on its judicial experience and common sense." *Id.* at 678, 679 (citations omitted). The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability." *Id.* at 678, 679 (citations omitted).

Pursuant to *Iqbal*'s approach, the undersigned will examine the challenged causes of action to determine whether Crespo has pleaded sufficient facts to state plausible claims.

### A. Count II of Crespo's Complaint States a Plausible Claim for Breach of Contract.

Defendants argue Crespo's Complaint does not adequately specify terms sufficient to sustain a breach-of-contract claim as to the $110,000 loan. *See* doc. 13 at 2 ("Count II formulaically recites that 'SmartHealth [sic] did not perform its obligations under the agreement.' It alleges no facts whatsoever as to what SmartHealth's supposed obligations were or how it failed to perform. The Complaint does not state any terms of the loan or when it was supposed to be paid back."). In this vein, Defendants claim Crespo must attach a written contract to the Complaint or, at a minimum, cite to specific language in the contract. *Id.* at 2-3. Next, Defendants assert any claim for breach of oral contract necessarily violates the statute of frauds. Finally, Defendants cite external documents to suggest Crespo contracted with Catalyst, a non-party to the suit. The plausibility standard does not warrant dismissal on any of the foregoing bases.

1.   *Alabama law applies to the substantive claims underlying the alleged $110,000 agreement.*

In a case where federal jurisdiction rests on diversity of citizenship, the court must apply the choice of law rules of the forum state to determine which law applies to the substantive claims.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side."); *see also Mid-Continent Cas. Co. v. Am. Pride Bldg. Co. LLC,* 601 F.3d 1143, 1148 (11ᵗʰ Cir. 2010) (determining the law of the forum state (Florida) governed substantive state law issues in a case based on diversity jurisdiction). Because this court sits in Alabama, Alabama law controls its choice-of-law analysis.

As an initial matter, a choice-of-law determination need not ensue where no substantive conflict exists between the competing jurisdictions as to the pertinent claims at issue.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) ("We must first determine whether Kansas law conflicts in any material way with any other law which could apply. There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit.").  However, as explained more fully below, Alabama and California courts interpret their respective statutes of frauds in a contrary manner, necessitating a choice of law analysis as to Counts II and III.

The basic elements of breach of contract and unjust enrichment do not appear to conflict under Alabama and California law.  *See Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala. 2009) ("The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages"); *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) ("[T]he elements of a cause of action for breach of contract [under California law] are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."); *Portofino Seaport Village, LLC v. Welch*, 4 So.3d 1095, 1098 (Ala. 2008) ("To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."); *Peterson v. Cellco Partnership.*, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008) ("The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" (quoting *Lectrodryer v. Seoulbank*, 91 Cal. Rptr. 2d 881, 883 (Cal. Ct. App. 2000)).

Nor do the applicable categories covered by each state's statute of frauds differ significantly.  *See* Alabama Civil Code § 8-9-2 (deeming (1) agreements "which, by [their] terms, [are] not to be performed within one year from the making thereof," (2) "special promise[s] to answer for the debt[s], default[s] or miscarriage[s] of another," and (3) agreements to "lend money" in amounts greater than $25,000 void unless memorialized

"in writing and subscribed by the party to be charged"); California Civil Code § 1624 (deeming (1) agreements "that by [their] terms [are] not to be performed within a year from the making thereof," (2) "special promise[s] to answer for the debt[s], default[s], or miscarriage[s] of another," and (3) "contract[s], promise[s], undertaking[s], or commitment[s] to loan money or to grant or extend credit[ ] in an amount greater than one hundred thousand dollars ($100,000)" invalid unless memorialized "in writing and subscribed by the party to be charged").

Crucially, however, Alabama and California courts differ regarding the types of oral contracts excepted from each regime's statute of frauds. Relevant here, Alabama courts hold the statute of frauds does not apply to executed contracts. *See Amanda Howard Real Estate, LLC v.* Lee, No. 1210193, 2023 WL 4281468, at *6 (Ala. June 30, 2023) ("[T]he Statute of Frauds does not void a contract that has been fully performed by the party seeking to enforce it."). Crucially, this exception provides that the distribution of funds can constitute the unilateral execution of a contract. *See Carter v. Holland*, 825 So.2d 832, 836 (Ala. Civ. App. 2001) ("The plain language of the Statute requires an agreement for commitments to lend money . . . . Once the money has been lent, the agreement becomes an executed contract as to the lender—all that remains for the lender to do is to receive the consideration for his loan (or performance), and the Statute of Frauds is no longer applicable.").

California courts likewise exclude *most* executed contracts from the statute's application. *See Marr v. Postal Union Life Ins. Co.*, 105 P.2d 649 (Cal. 1940) ("Where ...

there has been full performance upon the part of the party seeking to enforce the contract, the doctrine of estoppel arises."). However, "under well-established principles of California law, payment of money alone is not enough as a matter of law to take an agreement out of the statute of frauds." *Seacrest v. Security National Mortgage Loan Trust*, 84 Cal. Rptr. 3d 275, 278 (Cal. Ct. App. 2008); *see id.* at 285 ("The principle that full performance takes a contract out of the statute of frauds has been limited to the situation where performance consisted of conveying property, rendering personal services, or doing something other than payment of money. This limitation is consistent with [*Anderson v. Stansbury*, 242 P.2d 305 (Cal. 1952)] and other authority supporting the proposition the payment of money is insufficient part performance to take a contract out of the statute of frauds."). Given these discrepancies, the court must determine which state's relevant substantive law governs counts II and III.

In Alabama, the law of the forum where parties form a contract generally governs contract claims, absent an effective, contractual choice of law selected by the parties. *Blalock v. Sutphin*, 275 So. 3d 519, 523 (Ala. 2018) ("When determining which state's law applies in a contract dispute, Alabama follows the *lex loci contractus* rule.... Under this principle, we first look to the contract to determine whether the parties have specified a particular sovereign's law to govern.... Absent such a specification, we follow the general rule that the law of the state where the contract was formed should be applied, unless it is contrary to this State's fundamental public policy." (internal citations and quotation marks omitted)).

In cases where contract formation occurs in two or more jurisdictions, a contract typically manifests where the last act essential to the execution of the contract occurred. *Lemuel v. Admiral Ins. Co.*, 414 F. Supp. 2d 1037, 1049 (M.D. Ala. 2006), *aff'd*, 2007 WL 57097 (11th Cir. 2007) (citing *Ailey v. Nationwide Mut. Ins. Co.*, 570 So.2d 598, 599 (Ala. 1990); *Ferris v. Jennings*, 851 F. Supp. 418, 421 (M.D. Ala. 1993)); *Harrison v. Insurance Co. of North America*, 294 So.2d 253, 257 (Ala. 1975) ("[Defendant] offered, for a given sum, to insure … employees who made application for such coverage and authorized payroll deductions for the payment of the premium. [Plaintiff] accepted that offer in Alabama; therefore, the contract was made in Alabama … and is governed by Alabama law."); *Indus. Chem. & Fiberglass Corp. v. The N. River Insurance Co.*, 908 F.2d 825, 829 n.3 (11th Cir. 1990) (applying the Alabama *lex loci contractus* rule to determine "[t]he last act necessary to the execution of the … policies, the receipt and acceptance of the policies by the named insured, took place in New York."); *see also* 16 Am. Jur. 2d Conflict of Laws § 84 (noting the offeree's communication of its acceptance to the offeror often constitutes the last act essential to contract formation); Restatement (Second) Contracts § 63 (1979) ("an acceptance made in a manner and by a medium invited by an offer is operative and completes the manifestation of mutual assent as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror").

According to the Complaint, "Smart Health asked Mr. Crespo to loan it another $110,000," and "Nunez personally guaranteed repayment of the $110,000 loan." (Doc. 1-1 at 4 ¶ 10-11). Thereafter, Crespo "loaned $110,000 to Smart Health." (Id. at ¶ 12).

Based on these facts, the court infers Crespo accepted Smart Health's request and Nuñez's offer of guaranty in Alabama by fully performing his portion of the agreement (transferring the requested funds).[1]  Because this undertaking constituted the last act essential to the alleged contracts' formation, Alabama law governs the construction and validity of the $110,000 agreement.

### 2.  *Crespo's Complaint States a Claim for Breach of Contract on its Face.*

Under Alabama law, the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages."  *Shaffer*, 29 So.3d at 880.

Alabama law recognizes oral contracts.  *See Mobile Attic, Inc. v. Kiddin' Around of Alabama, Inc.*, 72 So.3d 37, 44 (Ala. Civ. App. 2011) ("[U]nless a contract is required by law to be in writing and signed by the parties, an offeree need not sign the contract to evince his or her mutual assent to it." (citing *Denson v. Kirkpatrick Drilling Co.,* 144 So. 86 (Ala. 1932))); *Lawler Mobile Homes, Inc. v. Tarver,* 492 So.2d 297, 304 (Ala. 1986) ("[A] contract may consist of several communications between the parties, some in writing and some oral, each constituting a link in the chain which comprises the entire contract."); *Gesrtenecker v. Gerstenecker*, 238 So.3d 646, 652 (Ala. 2017) ("[A]cceptance of an offer may be demonstrated by a means other than signing a written contract.").

---

[1] The extrinsic documents cited by Defendants suggest Crespo first assented to the agreement orally. That said, the above analysis remains unchanged regardless of whether Crespo accepted the terms of the agreement verbally or by engaging full performance of his obligation.

Defendants argue Crespo's Complaint lacks sufficient specificity because he fails to allege whether the $110,000 contract was oral or written, when the agreement was entered into, the specific terms of the agreement, or which terms Defendants breached. Crucially, however, "[t]he Federal Rules of Civil Procedure do not require that [p]laintiffs set out in detail the facts upon which their breach of contract claim is based." *Batlle v. Wachovia Bank, NA,* No. 10-21782-Civ, 2011 WL 1085579, at *3 (S.D. Fla. March 21, 2011) (citing *Iqbal*, 556 U.S. at 678)). Rather, "[t]o survive a motion to dismiss, [p]laintiffs need only state sufficient facts to make a plausible claim for relief and to provide Defendant notice of the claims against it." *Id.* (citing *Iqbal*, 556 U.S. at 678). "For better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *Comprehensive Care Corp. v. Katzman*, No. 09-01375, 2010 WL 1433414, at *3 (M.D. Fla. Apr. 9, 2010) (citing *In Re Se Banking Corp.,* 69 F.3d 1539, 1551 (11th Cir. 1995)).

Crespo does not specify whether the purported loan agreement took oral or written form. That said, Crespo states a claim for breach of contract regardless of the alleged agreement's mode of establishment.

Crespo establishes a plausible claim for breach of oral contract. First, Crespo lodges the following allegations regarding the existence of a valid contract and his own performance under the contract: in January of 2022, Smart Health asked Crespo to loan it $110,000 (doc. 1-1 at 4 ¶ 10); Crespo loaned $110,000 to Smart Health (*id.* at 4 ¶ 12,

5 ¶ 22); and Smart Health agreed to repay the loan (*id.* at 4 ¶ 13, 5 ¶ 22). Second, Crespo alleges Smart Health materially breached the contract by failing to repay the loan. (*Id.* at 4 ¶ 14, 5 ¶ 24). Finally, Crespo alleges he suffered damages (presumably in the amount of the outstanding funds) because of Smart Health's breach. (*Id.* at 4 ¶ 15, 5 ¶ 25). These facts, taken as true, plausibly satisfy the elements for a breach of oral contract claim. *See Gowen v. Tiltware LLC*, 437 F. App'x 528, 529 (9th Cir. 2011) ("The district court erred in dismissing the breach of contract … claims against [defendant]. [Plaintiff] alleged … [defendant] promised orally to provide her with a '1% ownership interest' and make distribution payments based on that interest once the company became profitable. She promised to join [defendant company]. Taken as true, these allegations are specific enough to survive a motion to dismiss."); *Liquid Advertising, Inc. v. G & G Development Antigua*, No. 8:07-cv-999-T-30MAP, 2007 WL 3231784, at *3 (M.D. Fla. Oct. 30, 2001) ("Upon a review of the allegations contained in the First Amended Complaint, the Court concludes that the allegations pled by Plaintiff are sufficient to state a claim for breach of an oral contract. Plaintiff has alleged that: Plaintiff and Defendants orally agreed that Plaintiff would provide advertising services and that Defendants would pay for such services pursuant to the Budget; Plaintiff performed consulting, marketing, design and advertising services on Defendants behalf based on such agreement; Defendants accepted, acknowledged, utilized and received the benefit of Plaintiff's services; and Defendants failed to pay for such services in full."); *Great American Insurance Company v. Pino Kaobo & Associates, Inc.,* No. 08-20847-

14

CIV-DIMITROULEAS, 2008 WL 11333253, at *3 (S.D. Fla. Dec. 8, 2008) ("The Third-Party Complaint alleges … [the parties] 'agreed to unite their skills to design and construct design build projects.' … The parties represented and warranted that performance would be in accord with industry standards.  It alleges that the third-parties failed to conform with the standards.  There are no other details about the alleged oral contract.  However, at this stage of the litigation, the Court finds that [defendant] has sufficiently alleged breach of an oral contract—that an agreement was entered into to design the projects and that [the third parties] breached these terms by failing to conform to industry standards.").

Moreover, Crespo establishes a plausible claim for breach of a written contract. "It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Herssein L. Grp. V. Reed Elsevier, Inc.,* 594 F. App'x 606, 608 (11th Cir. 2015). As recounted previously, Crespo's claim for breach of contract alleges Smart Health asked Crespo to loan it $110,000 in January 2022 (doc. 1-1 at 4 ¶ 10); Crespo loaned $110,000 to Smart Health (*id.* at 4 ¶ 12, 5 ¶ 22); Smart Health agreed to repay the loan (*id.* at 4 ¶ 13, 5 ¶ 22); Smart Health materially breached the contract by failing to repay the loan (*Id.* at 4 ¶ 14, 5 ¶ 24); and Crespo suffered damages (presumably in the amount of the outstanding funds) because of Smart Health's breach.  (*Id.* at 4 ¶ 15, 5 ¶ 25).  The allegations above adequately specify the actual terms of the agreement allegedly breached: namely, Smart Health failed to heed its obligation to repay the borrowed

15

funds. Thus, consistent with Rule 8, the Complaint puts Smart Health on notice of any grievances against it. *Compare to Burgess v. Religious Tech. Ctr.,* 600 F. App'x 657, 664 (11th Cir. 2015) (affirming Rule 12(b)(6) dismissal where plaintiffs "failed to identify the specific contractual provisions that the defendants breached" and "never identified the contract provision that formed the basis of their claims").

Defendants fault Crespo for not attaching a copy of a written contract vis-à-vis the $110,000 loan to the Complaint, if such exits. The applicable rules do not require such an attachment. "Under Federal Rule of Civil Procedure 10(c), '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.' However, the rule is permissive in nature…. [T]he plaintiff has 'no obligation to attach to her complaint documents upon which her action is based.'" *Hamilton v. State Farm Mut. Auto. Ins. Co.,* 2013 WL 5231483, at *2 (M.D. Fla. Sept. 16, 2013) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)).[2]

Defendants cite *Capmark Bank v. RGR, LLC,* 81 So.3d 1258, 1268 (Ala. 2011), for the proposition that "[a]n alleged loan agreement that is silent as to its essential

---

[2] Correspondence subscribed by the party to be charged may constitute a written contract so long as the media discloses the "requisite mutuality of agreement" and indicates "an intention regarding the final expression of the parties' agreement." *Webster v. Aust,* 628 So.2d 846, 847 (Ala. Civ. App. 1993). For example, the Alabama Supreme Court has suggested "a cashier's check may serve to satisfy the statute of frauds if it complies with the formalities." *Id.* at 848 (citing *Houston v. McClure,* 425 So.2d 1114 (Ala. 1983)). To this end, Crespo alludes to the existence of "a writing in the form of board minutes signed by Mr. Nuñez, reflecting the $110,000 loan." (Doc. 11 at 8 n.1). Moreover, the extrinsic evidence presented by Defendants include an email from Nuñez to Crespo confirming the loan request. (Doc. 4-2 at 3). Discovery will reveal whether such documents, or others yet to be disclosed, constitute a legally binding writing.

terms, such as interest rate and term of the loan, is not enforceable." (Doc. 4 at 6). *Capmark*, however, featured an existing written agreement conspicuously lacking the terms alleged by the defendant. In particular, the defendant claimed the written loan agreement at issue contemplated the plaintiff's provision of $300,000 in cash-flow funding. *Id.* However, the court determined "nothing in a reading of the express terms of the loan documents" gave rise to such an obligation. *Id.* The court concluded any alleged "separate but contemporaneous" agreement obligating the plaintiff to provide cash-flow funding was ultimately unenforceable because the defendant "offered nothing in the way of the essential terms of the agreement, including but not limited to the interest rate to be charged, the term of the loan, and any restrictions placed on the loan." *Id.; see also Garig v. East End Memorial Hospital*, 182 So.2d 852, 855 (Ala. 1966) ("The alleged contractual obligation in each count is 'to furnish to plaintiff general hospital care and treatment.' There is no averment of any specific terms in the contract requiring the exercise of reasonable care in performing the contract. In the absence of express terms to this effect in the contract, such terms will not be implied."). Here, the Complaint does not specify any other terms of the alleged agreement vis-à-vis the $110,000 loan. Thus, the court at this stage will not consider whether a putative, written loan agreement lacked any such other essential terms.

The Complaint as it currently stands puts Smart Health on notice of Crespo's breach of contract claim: Smart Health allegedly asked for a $110,000 loan, Crespo allegedly provided the requisite funds, Smart Health allegedly failed to repay the loan,

and Crespo allegedly suffered damages as a result.  These facts, taken as true, plausibly state a claim for relief.

> 3. *Defendants' Statute of Frauds Defense Does Not Appear on the Face of the Complaint.*

Next, Defendants argue the $110,000 loan agreement, if indeed oral, necessarily violates the statute of frauds.  (*See* Doc. 13 at 4 ("If the $110,000 agreement … [was] written, Count[] II … fail[s] because Crespo failed to identify and present the actual contract terms…. If [it was] oral, then Count[] II … must be dismissed because the agreement[ is] void under the statute of frauds….")).

In federal court, a defendant may raise certain affirmative defenses, including a statute of frauds defense, in a Rule 12(b)(6) motion prior to answering a complaint. *Wells v. Brown*, 58 F.4th 1347, 1356 (11th Cir. 2023) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 721-29 (3d ed. 2004)).  That said, the affirmative defense must appear on the face of the complaint.  *Id.* (quoting *Leveto v. Lepina*, 258 F.3d 156 (3d Cir. 2001)).

Alabama Civil Code § 8-9-2 provides, in relevant part,

> In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
> (1) Every agreement which, by its terms, is not to be performed within one year from the making thereof;
> …
> (3) Every special promise to answer for the debt, default or miscarriage of another;
> …

(7) Every agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000.

Defendants argue "Crespo has not and cannot produce a written agreement with the Defendants regarding the $110,000 loan," thereby rendering the agreement void. (Doc. 4 at 7). As the quoted provisions establish, an executory contract to loan $110,000 requires an agreement memorialized in writing and signed by the party to be charged. However, Defendants overlook a critical exception previously discussed: in Alabama, the statute of frauds typically does not apply to an executed contract. *See Amanda Howard Real Estate,* 2023 WL 4281468, at *6 ("[T]he Statute of Frauds does not void a contract that has been fully performed by the party seeking to enforce it."); *Carter*, 825 So.2d at 836 ("The plain language of the Statute requires an agreement for commitments to lend money . . . . Once the money has been lent, the agreement becomes an executed contract as to the lender—all that remains for the lender to do is to receive the consideration for his loan (or performance), and the Statute of Frauds is no longer applicable."). Because Crespo alleges full performance of his portion of the agreement (*i.e.*, loaning the requisite funds), the statute of frauds does not apply to the executed agreement between Crespo and Smart Health.

Nor does the face of the Complaint contemplate a performance period of greater than one year. *See* Ala. Civ. Code § 8-9-2(1); *Ex Parte Ramsay*, 829 So.2d 146, 155 (Ala. 2002) ("The oral contract … required 'two or three years' of performance by [party one]

and allowed 'two or three years' for the performance by [part two]. Thus, the contract doubly met the criterion of § 8–9–2(1).").  In the present case, Crespo alleges Smart Health asked for a $110,000 loan in January 2022.  (Doc. 1-1 at 4 ¶ 10).  However, the Complaint does not specify when the loan period began, the term of the loan, or the loan's due date.  As such, an issue of fact remains as to whether the agreement contravened the statute vis-à-vis the one-year limitation.[3]

### 4. *The Court Declines to Consider Defendants' Cited External Documents Because They Are Not Central to the Complaint.*

Moreover, Defendants claim Count II fails because "the loan was made to Catalyst, not the Defendants."  (Doc. 4 at 5).  To this end, Defendants cite extrinsic documents recording Crespo's efforts to collect on the $110,000 loan—a demand letter for payment addressed to Catalyst, an email from Nuñez to Crespo requesting a $110,000 loan to Catalyst, a wire confirmation from Chase Bank to Catalyst, wiring instructions, and a mail receipt.  (Doc 4-2).  Crespo himself does not attach any documents to the Complaint corroborating the $110,000 loan or the personal guaranty.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether *the plaintiff's complaint alone* is legally sufficient to state a claim for which relief may be granted."  *Tal*

---

[3] Notably, the January 6, 2023, demand letter attached by Defendants to their Rule 12(b)(6) motion reflects a "failure to pay" the $110,000 loan by that date as well as an attempt to "resolve [the] matter." (Doc. 4-2 at 2).  If the term of the loan began in January 2022 as stated by the Complaint, the January 6, 2023, correspondence may indicate an intent for performance of the loan agreement's terms in less than a one-year period.

*v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (emphasis added), *cited in*, *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014). In general, a district court may convert the motion to dismiss into a summary judgment motion if it considers materials outside of the complaint. *See* Fed. R. Civ. P. 12(b). That said, in ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim and (2) its authenticity is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity."); *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss.").

The centrality inquiry encompasses documents a plaintiff must offer to prove its case. *FSA*, 500 F.3d at 1285 ("[p]laintiffs unquestionably would have had to offer a copy of the [extrinsic document] in order to prove their case." (quoting *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) (first alteration in original)); *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019) ("A document is central to a complaint when it is a 'necessary part of [the plaintiff's] effort to make out a claim.'" (quoting *Day*, 400 F.3d at 1276) (alteration in original)). To this end, "a document is typically 'central' to a claim only if it is a written instrument attached to or referenced

in the complaint *and* itself gives rise, or is otherwise intrinsic, to the claim, such as an insurance policy or other contract or a promissory note." *Glass v. City of Glencoe*, No. 4:17-cv-0026-JEO, 2017 WL 1407477, at *3 (N.D. Ala. Apr. 20, 2017) (emphasis added).  By contrast, documents that "merely recount circumstances or information relevant to a claim" are not considered "central"; "if it were otherwise, almost all evidence would be 'central' to a claim, and the distinction between motions to dismiss under Rule 12(b)(6) and motions for summary judgment under Rule 56 would be eviscerated." *Id.*; *see also Adamson v. Poorter*, No. 06-15941, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007) ("A document is not 'central' merely because it is directly responsive to a factual allegation.").

Crespo's Complaint does not explicitly refer to or attach the extrinsic documents included in Defendants' Exhibit B.  At best, the Complaint implicitly encompasses information contained within those documents.  Though the email exchange between Nuñez and Crespo evidences an initial request for funds, the wire confirmation evidences the transfer of funds, and the demand letter for payment evidences Crespo's expectation of payment, such documents do not give rise to Crespo's claims.  Rather, they merely reflect information perhaps pertinent to the claims.  *Glass*, 2017 WL 1407477 at *3.  Moreover, other documents revealed in discovery may contain the same or similar information.  For example, Crespo's Response indicates the existence of "board minutes signed by Mr. Nuñez, reflecting the $110,000 loan." (Doc. 11 at 8 n. 1).  Accordingly, Crespo need not "unquestionably" offer the collection documents.

*FSA*, 500 F.3d at 1285.  Given the foregoing considerations, the undersigned will not consider the evidence contained in Defendants' Exhibit B at this stage in the litigation.

Nor will the court consider Exhibit A—Michael Nuñez's affidavit.  Witness affidavits "merely recount circumstances or information relevant to a claim"; they are not "central."  *Glass v. City of Glencoe*, 2017 WL 1407477, *3 (N.D. Ala. Apr. 20, 2017).  Such understandings reflect the situation at bar.  *See id.* at *4 ("Hayes and Welch are but third-party witnesses, and their affidavits merely recite some of their activities related to Plaintiff's case.  Moreover, the affidavits are not referenced in the complaint; indeed, they were not created until after Defendants filed their pending motions to dismiss."); *Intersport, Inc. v. T-Town Tickets LLC*, 896 F. Supp. 2d 1106, 1109 (N.D. Ala. 2012) (excluding an external affidavit from consideration on a motion to dismiss).

Even if this court considered Defendants' Exhibit B documents, the extrinsic evidence would not render Crespo's claim implausible.  The documents certainly reflect the transfer of $110,000 from Crespo to Catalyst—a nonparty to the suit.  However, the attached email from Nuñez to Crespo regarding the transfer of funds to "the Catalyst account" contains a conspicuous Smart Health (formerly Predictive Health) logo, suggesting Smart Health and Catalyst do not operate as entirely separate entities. (Doc. 4-2 at 3).  To this end, discovery could well reveal Catalyst's role as a repository for loan funds intended for later transfer to Smart Health.  Moreover, though the demand letter for payment addressed to Catalyst may suggest Catalyst borrowed funds directly, Crespo does not rely on this document to lodge his claim.  Thus, at this stage

in the litigation, the court deems discovery necessary to ascertain the nature of the loan. Given these plausible readings of the extrinsic documents, together with the Complaint, Crespo's breach of contract claim regarding the $110,000 loan agreement stands.

## B. Notwithstanding a Statute of Frauds Defense for Breach of Oral Guaranty, Count III of Crespo's Complaint States a Plausible Claim for Breach of Written Guaranty.

Defendants argue Crespo's Complaint fails to allege specific terms sufficient to lodge a claim for breach of guaranty. *See* doc. 13 at 2 ("Count III asserts that SmartHealth and Mr. Nunez have not repaid the loan but again fails to allege any facts showing breach of any specific contract terms."). As an initial matter, the court discerns that any claim for breach of oral guaranty facially violates the statute of frauds because the executed contract exception does not apply to guaranties under Alabama law. However, Crespo does not specify the form of the alleged agreement in his Complaint. Taking the facts at face value, the Complaint lodges a plausible claim for breach of written guaranty.[4]

### 1. *Crespo's Complaint Facially Fails to State a Claim for Breach of Oral Guaranty Because the Statute of Frauds Mandates a Written Agreement.*

As aforementioned, a statute of frauds affirmative defense must appear on the face of a complaint to justify dismissal. *Wells*, 58 F.4th at 1356 (quoting *Leveto*, 258 F.3d 156); *see also ANZ Advanced Techs., LLC v. Bush Hog, LLC*, 2009 WL 3415650, at *4 n.4

---

[4] Pursuant to the court's analysis under Count II, Alabama law applies to the substantive claims regarding the alleged $110,000 agreement. In addition, for the reasons stated previously, the court declines to consider the extrinsic documents cited by Defendants in relation to Count III because they are not central to the Complaint.

(S.D. Ala. Oct. 20, 2009) (finding "a [statute of frauds] defense [did] not render Plaintiff's claims implausible nor authorize [the court] to ignore the material issues of fact which have yet to be addressed with any discovery by either side"); *Abernathy v. Church of God*, 2011 WL 13135285, at *2 (N.D. Ala. Nov. 28, 2011) ("The court finds particularly problematic [defendant's] position that the court should find in its favor on its statute of frauds defense at the pleadings stage and in the absence of considering whether any exceptions to such a defense may apply.").

To the extent the Complaint alleges the existence of an oral contract establishing a guaranty, it facially contravenes the statute of frauds. Unlike Crespo's breach of contract claim, the executed contract exception to the statute of frauds does not apply to a guaranty claim, which involves a contract to pay the debts of another. *See* Ala. Civ. Code § 8-9-2(3); *Parker v. Williams*, 977 So.2d 476, 480 (Ala. 2007) ("[Because] a purported oral promise by a third party 'to see to it' that a loan was repaid would have to be in writing to be enforceable, we conclude that this Court has not extended the executed-contract exception to the Statute of Frauds to situations involving a guaranty…. Extending the executed-contract exception to 'promise[s] to answer for the debt, default or miscarriage of another' would essentially negate the Statute of Frauds in that context because practically all disputes regarding a guaranty arise after the debt has been created."); *Amanda Howard Real Estate*, 2023 WL 4281468 at *6 ("[W]e have previously declined to apply the full-performance exception when it would swallow the rule as to a whole category of contracts. Specifically, we have declined to apply the

exception to suretyship contracts because, in practically all such cases, the contract has been fully performed by the obligee, such that the exception would essentially negate the Statute of Frauds' writing requirement for suretyship contracts."); 10 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 27:19 (4th ed. 2011) ("[I]n no event can ... full performance by one party removing the contract from the Statute [of Frauds] be applied to a promise to answer for the debt of another since the creditor will always have fully performed ....").[5]  As such, any promise from Nuñez to Crespo to answer for Smart Health's debts would require a writing subscribed by the party to be charged, Nuñez.

### 2.  *Crespo's Complaint Facially States a Claim for Breach of Written Guaranty.*

Crespo does not specify whether the purported guaranty agreement took oral or written form.  Thus, Crespo's claim may survive if he plausibly alleges breach of a written guaranty.  Despite no indication in the Complaint as to the form of the agreement, the court finds the pleading satisfies the applicable standard.

---

[5] Such promises exist outside the ambit of the statute when they rest upon new consideration.  *See Phillips Brokerage v. Professional Personnel Consultants*, 517 So.2d 1, 2 (Ala. Civ. App. 1987) ("A promise to pay the debt of another which is based upon a new and valuable consideration which is beneficial to the promisor is not within the statute…. [T]he essence of the new undertaking must be the payment of the promisor's own debt, by paying the debt of a third person." (internal citations and quotation marks omitted)).

Moreover, the statute does not cover promises a guarantor makes directly to a debtor.  *Stewart v. State Farm Mut. Auto Ins. Co.,* 605 So.2d 1214, 1216 (Ala. 1992) ("[A] promise made to a debtor whereby the promisor undertakes to discharge the debt is not affected by § 8–9–2.").

No alleged facts in the present case suggest Nuñez's promise rested upon new consideration.  In addition, the Complaint alleges Nuñez guaranteed payment to Crespo, not Smart Health.  As such, Alabama Civil Code § 8-9-2(3) appears to apply.

As aforementioned, "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Herssein L. Grp.,* 594 F. App'x 606 at 608. Crespo's claim for breach of guaranty alleges "Mr. Nunez personally guaranteed repayment of the $110,000 loan made by Mr. Crespo to Smart Health," "Smart Health has not repaid the loan," "Mr. Nunez breached his obligation by failing to pay Mr. Crespo the monies owed," and "Mr. Crespo has been damaged as a result of Mr. Nunez's breach of his obligations." (Doc. 1-1 ¶¶ 27-30).  Because the Complaint plausibly alleges Smart Health materially breached its obligation under the agreement by failing to repay the loan, Crespo also plausibly alleges Nuñez breached his duty to assume Smart Health's obligations in the event of default.  Though Crespo does not attach a copy of the contract to the complaint, the Federal Rules do not require attachment at this early stage in the litigation.  *See Hamilton,* 2013 WL 5231483, at *2. Even without clear evidence of a formal writing, the allegations above specify the terms of the guaranty agreement allegedly breached (i.e., assumption of the loan obligation in the event of default) and put Nuñez on notice of the claims against him.  *Compare to Burgess,* 600 F. App'x 657 at 664 (dismissing claim where plaintiffs "never identified the contract provision that formed the basis of their claims").  If discovery reveals the absence of a written agreement regarding the guaranty, Nuñez may move for summary judgment at that time.

### C. Count V of Crespo's Complaint States a Plausible Claim for Unjust Enrichment.

As an initial matter, a choice-of-law analysis need not ensue as to this claim because no substantive conflict exists between the competing jurisdictions as to the cause of action. *Phillips Petroleum*, 472 U.S. at 816. That is, as to Count V, the laws of Alabama and California do not conflict regarding the elements of unjust enrichment.[6]

In Alabama, "[t]he doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Battles v. Atchison,* 545 So.2d 814, 815 (Ala. Civ. App. 1989). "To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Portofino Seaport Village*, 4 So.3d at 1098. In the context of money lent, "the plaintiff must show that the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Dickinson v. Cosmos Broad. Co.*, 782 So.2d 260, 266 (Ala. 2000) (internal quotation marks omitted).

Likewise, in California, "[t]he elements of a cause of action for unjust enrichment are simply stated as 'receipt of a benefit and unjust retention of the benefit at the

---

[6] For the reasons stated previously, the court declines to consider the extrinsic documents cited by Defendants in relation to Count V because they are not central to the Complaint.

expense of another.'" *Peterson*, 80 Cal. Rptr. 3d at 323 (quoting *Lectrodryer,* 91 Cal. Rptr. 2d at 883).  Specifically, a claim for money lent "permit[s] a plaintiff to recover money that, under the circumstances, the defendant should be required to repay to avoid inequity." *Rubinstein v. Fakheri*, 263 Cal. Rptr. 3d 344, 353 (Cal. Ct. App. 2020) (citing *Philpot v. Superior Court*, 3 P.2d 635 (Cal. 1934)); *see id.* at 811 ("It was sufficient for [plaintiff] to prove that [defendant] received the loan under circumstances showing an equitable obligation to repay it.").

Crespo's Complaint, on its face, alleges a plausible claim for unjust enrichment. The following facts, taken as true, demonstrate Crespo conferred $110,000 to Defendants, Defendants knowingly and voluntarily retained those funds, Crespo expected compensation in return, and Defendants failed to repay the funds:

- In January 2022, Smart Health asked Crespo to loan it $110,000.  (Doc. 1-1 at 4 ¶ 10).
- Nuñez personally guaranteed repayment of the $110,000 loan.  (*Id.* at 4 ¶ 11).
- Crespo conferred $110,000 to Smart Health.  (*Id.* at 4 ¶ 12).
- Nuñez, on behalf of Smart Health, repeatedly reassured Crespo that the loan would be repaid.  (*Id.* at 4 ¶ 13, 7 ¶ 37).
- Smart Health and Nuñez did not repay the loan. (*Id.* at ¶ 14, 7 ¶ 38).

*See Sport Management Systems, LLC v. Woolley Group, LLC,* No. 15-CIV-62224-BLOOM/Valle, 2016 WL 8793333, at *6 (S.D. Fla. Mar. 23, 2016) (finding pleading standards satisfied where plaintiff "alleged in the Amended Complaint that Defendant has had use of the proceeds of the loan, that Defendant has not repaid the loan to

Plaintiff, and that the use of the proceeds without repayment of the entire sum back to Plaintiff constitutes unjust enrichment.").

Moreover, Defendants' extrinsic documents, if considered, would not defeat Crespo's unjust enrichment claim.  As aforementioned, the documents manifest a transfer of $110,000 from Crespo to Catalyst—a nonparty to the suit.  However, the attached email from Nuñez to Crespo regarding the transfer of funds to "the Catalyst account" contains a Smart Health (formerly Predictive Health) logo, suggesting Smart Health and Catalyst may operate in tandem.  (Doc. 4-2 at 3).  To this end, discovery could well reveal Catalyst's role as a repository for loan funds intended for later transfer to Smart Health.  Moreover, discovery could disclose the existence of a holding company/subsidiary company-type relationship between Catalyst and Smart Health through which Defendants received or benefited from funds extended from Crespo to Catalyst.  In any event, Crespo's Complaint sustains an unjust enrichment claim against Smart Health and Nuñez.

## D. Count IV of Plaintiff's Complaint Fails to State a Claim for Which Relief Can Be Granted Because It Constitutes an Impermissible Alternative Claim.

The substantive law of Alabama and California preclude a plaintiff from receiving an equitable remedy for unjust enrichment in the presence of an undisputed express contract.[7]  *See Kennedy*, 682 So.2d at 447 ("'[W]here an express contract exists

---

[7] A choice-of-law analysis need not ensue as to this claim because no substantive conflict exists between the jurisdictions as to the cause-of-action.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816

between two parties, the law generally will not recognize an implied contract regarding the same subject matter."); *Vardaman*, 544 So.2d at 965 ("[U]nder Alabama law, claims of both an express and an implied contract on the same subject matter are generally incompatible. This Court has recognized that where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter."); *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 49 Cal. Rptr. 2d 191, 198 (Cal. Ct. App. 1996) ("When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract.").

In general, the Federal Rules allow a plaintiff to plead claims in the alternative. Fed. R. Civ. P. 8(d)(2)-(3).   However, a "party may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count." *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1276 (11th Cir. 2023) (quoting *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 887 (7th Cir. 2022)).   That is, "an alternative claim for unjust enrichment is only available when the existence of the contract is disputed [according to state substantive law]." *Mckinney v. Pinter*, No. 2:19-cv-00503-ACA, 2021 WL 1056613, at *14 (N.D. Ala. Mar. 19, 2021); *see also Kennedy*, 682 So. 2d at 447 (holding the trial court properly submitted both implied and express

---

(1985).  That is, as to Count IV, the laws of Alabama and California do not conflict regarding the availability of an equitable remedy when an express contract governs the agreement in question.

contract theories to the jury where "the existence of an express contract … was highly disputed and remained a question of fact").

The Complaint pleads the existence of a valid Loan Agreement dated November 17, 2021, and attached as Exhibit A (doc. 1-1 at 4, 9-28).  Furthermore, Defendants do not dispute the existence or validity of the contract; they merely dispute the scope of its terms.  Crucially, too, Count IV of Crespo's Complaint regarding the unjust enrichment claim "adopts and incorporates all previous allegations as if specifically stated herein," which encompasses the allegations regarding the existence of the Loan Agreement.  (Doc. 1-1 at 6).  As such, "[Crespo] pleaded a contractual relationship as part of [his] unjust enrichment claim, and that contractual relationship defeats [his] unjust enrichment claim under [Alabama or California] law."  *Marquez*, 69 F.4th at 1276.[8]  *See also Alfaro v. Bank of America, N.A.,* No. 21-10948, 2024 WL 1110945, at *8 (11th Cir. Mar. 14, 2024) ("[Plaintiffs] are right that they could have pleaded their unjust enrichment claims in the alternative…. But they didn't; they alleged that the express contract governed '[a]t all times relevant to this action.'") (citing *Marquez*); *Global Network Mgmt., Ltd. v. Centurylink Latin Am. Sols., LLC*, 67 F.4th 1312, 1316–19 (11th

---

[8] Crespo argues Defendants' reliance on *Marquez* is misplaced because the court in that case applied Washington substantive law.  As an initial matter, *Marquez* primarily concerns *federal* pleading standards. Moreover, Alabama and California law appear virtually identical to Washington law; as stated previously, both states preclude recovery under an unjust enrichment theory when an undisputed express contract exists.  Washington courts endorse the same rule.  *See Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) ("Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship ...."); *see also Pengbo Xiao v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1190–91 (W.D. Wash. 2019) ("Under Washington law ... [w]here a valid contract governs the rights and obligations of the parties, unjust enrichment does not apply.").

Cir. 2023) (applying Florida law and affirming the dismissal of an unjust enrichment claim because the complaint "alleged that there was an express agreement governing the relationship between the two parties"); *Collaboration Betters The World, Inc. v. Hertz Corporation,* No. 2:23-CV-131-JES-KCD, 2023 WL 3931822, at *3 (M.D. Fla. June 9, 2023) ("Although plaintiff can plead unjust enrichment in the alternative, that count incorporates all factual allegations regarding the existence of a valid contract as alleged in Counts I and II…. The motion to dismiss will be granted … without prejudice.") (citing *Marquez*); *Arencibia v. AGA Serv. Co.*, No. 21-11567, 2022 WL 1499693, at *2 (11th Cir. May 12, 2022) (affirming the dismissal of an unjust enrichment claim partly because of the existence of a valid and express contract).

Crespo cites *Carter v. Companion Life Ins. Co.,* No. 2:18-CV-0350-JEO, 2019 WL 116739, at *7 (N.D. Ala. Nov. 12, 2019) and *Camp v. Ala. Telco Credit Union*, No. 2:12-cv-2237, 2013 WL 2106727, at *6 (N.D. Ala. May 13, 2013) to support his position on this issue.  As an initial matter, both cases pre-date *Marquez*, an Eleventh Circuit case. Moreover, in both *Carter* and *Camp*, the plaintiff disputed the existence of a binding contract.  *See Carter*, 2019 WL at *7 n.6 ("[T]he court should not be understood as having determined whether Plaintiff's Proposed [pleading] does, in fact, state an unjust enrichment claim under federal pleading standards. In his reply brief, Plaintiff suggests that, notwithstanding his averments that a contract existed, he might pursue an unjust enrichment claim based on his allegation that Defendants never delivered a copy of the insurance policy to him, putatively in violation of Ala. Code § 27-14-19. Plaintiff

continues that if such non-delivery were proven, 'a binding contract potentially never existed, and therefore the unjust enrichment claim would be in play.'") (internal citations omitted); *Camp*, 2013 WL at *6 ("Although Plaintiffs' unjust enrichment claim in the Amended Complaint specifically refers to an Account Agreement, they likewise contend that any express contract is unconscionable."). Thus, Crespo's reliance on these cases stands misguided. *See also Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1359 (M.D. Fla. 2021) ("Where parties dispute the existence of an underlying contract, dismissal of Plaintiff's unjust enrichment claim is premature.").

In summary, Crespo "pleaded the existence of an express" contract within Count IV's unjust enrichment averments, and, with respect to the $150,000 loan, also "provided a copy of that document attached to" his Complaint. *Selby v. Goodman*, No. 2:13-CV-2162-RDP, 2014 WL 2740317, at *6 (N.D. Ala. June 17, 2014). Because neither party disputes the existence of an enforceable contract, Crespo's unjust enrichment claim necessarily fails.

In accordance with the foregoing analysis, the court **DISMISSES** Count IV of Crespo's Complaint. Crespo may proceed with Counts I, II, III, and V.

## II.    VENUE CONTENTIONS

### A. The Loan Agreement's Forum Selection Provision Allows the Lender (Crespo) to Bring Claims Relating to—Including Claims Arising Out of— the Agreement in the Courts of Any Jurisdiction.

The $150,000 Loan Agreement attached to Crespo's Complaint contains the following paragraph governing venue:

> **14.    Governing Law; Jurisdiction; Consent to Service of Process; Waiver of Jury Trial.** … Borrower hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Superior Court of the State of California sitting in Irvine, California and of the United States District Court of the Central District of California, and any California appellate court from any thereof, in any action or proceeding arising out of this Agreement, or for recognition or enforcement of any judgment relating thereto or arising therefrom, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be exclusively heard and determined in such California State court or, to the extent permitted by applicable law, in such California federal court…. Nothing in this Agreement shall affect any right that Lender may otherwise have to bring any action or proceeding relating to this Agreement against Borrower or its properties in the courts of any jurisdiction. Borrower hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any court referred to in this Section 14. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of any purported inconvenient forum to the maintenance of such action or proceeding in any such court….

(Doc. 1-1 at 22).

Federal law controls the enforceability of a forum selection clause.  *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 32 (1988) ("We hold that federal law … governs the District Court's decision whether to give effect to the parties' forum-selection clause.").

A forum selection clause included in a contract between parties may dictate a suit's venue if the reviewing court deems the clause enforceable; such clauses "are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Feggestad v. Kerzner It'l Bahamas Ltd.,* 843 F.3d 915, 918 (11th Cir. 2016). For example, courts may strike a forum selection clause if "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of his day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.*

Neither party disputes the validity or enforceability of the Loan Agreement's forum selection provision; the parties merely disagree about its scope. (*See* doc. 11 at 9). While Smart Health contends the clause binds both parties to the exclusive jurisdiction of the California courts, Crespo argues the clause binds the "Borrower" only to such jurisdiction.

Construing the scope of the forum selection provision requires interpreting the parties' Agreement. "It is well settled that state law governs issues of contract interpretation that arise in a diversity action." *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1290 (11th Cir. 2022) (citing *Fernandez v. Bankers Nat'l Life Ins.*, 906 F.2d 559, 564 (11th Cir. 1990)); *see id.* (applying Maryland principles to interpret the parties' contract, including its forum selection clause, where the contract specifically designated the application of Maryland law); *id.* at 1298 (Tjoflat, J., concurring) (summarizing a

36

parallel proceeding in the Connecticut District Court and citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 217-18 (2d Cir. 2014), to infer "the interpretation of [a forum selection clause] is governed by state contract law.").[9]   As recounted previously, the parties' Agreement specifies California law as controlling the interpretation of its terms.  (Doc. 1-1 at 22).[10]

---

[9] A prior Eleventh Circuit decision provides that "the construction of forum selection clauses by federal courts is a matter of federal common law, not state law of the state in which the federal court sits…. Under federal common law, forum selection clauses are to be interpreted by reference to ordinary contract principles." *Cornett v. Carrithers*, 465 F. App'x 841, 842 (11th Cir. 2012) (citing *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003)).  Of course, *Cornett* predates *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285 (11th Cir. 2022), and "'[i]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.'" *United States v. Smith*, 201 F.3d 1317, 1322 (11th Cir. 2000) (quoting *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993)).

However, *Cornett* constitutes an unpublished decision, and pursuant to Eleventh Circuit rule "[u]npublished opinions are not considered binding precedent." 11th Cir. R. 36-2.  Furthermore, the published decision *Cornett* relies upon for its proposition, *P & S Bus. Machs.*, expresses at the relevant portion that federal law governs *enforcement*, not interpretation, of a forum selection provision in a diversity action.  *See P & S Bus. Machs.*, 331 F.3d at 807 ("Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law, under 28 U.S.C. § 1404(a) (1982), not state law." (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28–29 (1988))).  Therefore, interpretation of the parties' forum selection provisions requires application of California law, not federal common law.

In any event, federal law and California law posit the same general principles of contract interpretation, producing the same result reached herein on the interpretation of the forum selection provisions.

[10] When presented with ambiguous contract terms, courts generally construe such ambiguities against the drafter.  See Rest. 2d Contracts, § 206; *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) ("The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result.").  As the following analysis portrays, the undersigned does not consider the Agreement's disputed terms ambiguous.  However, even if such ambiguity existed, Paragraph 18(b) of the parties' Agreement states, "This Agreement shall be deemed to be jointly drafted by the Borrower and Lender and shall not be construed against any person as the drafter hereof."  Therefore, the parties apparently waived the foregoing interpretive principle.  Thus, the court must interpret the contract terms at issue without a predisposition towards either party.

Though Paragraph 14 certainly does not present a picture of clarity, the undersigned concludes Crespo's interpretation more accurately encapsulates the meaning of the contractual provisions. California law provides the following general, interpretive principles:

> In general, interpretation of an insurance policy is a question of law . . . . "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)'"

*Ameron Internat. Corp. v. Ins. Co. of State of Pennsylvania*, 242 P.3d 1020, 1024 (Cal. 2010), *as modified* (Jan. 19, 2011) (citations omitted).

A reviewer must construe a contract in its entirety. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *MacKinnon v. Truck Ins. Exchange*, 73 P.3d 1205, 1213 (Cal. 2003) ("[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract."). As such, "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory.... [T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously." Antonin Scalia & Bryan A. Garner, READING LAW: THE

INTERPRETATION OF LEGAL TEXTS 180 (2012), *cited in*, *Landau v. Superior Court*, 244 Cal. Rptr. 3d 454, 461 (Cal. Ct. App. 2019), *and In Re Shek*, 947 F.3d 770, 777 (11th Cir. 2020)).    Relatedly, courts disfavor constructions rendering contractual language superfluous.  *See Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.,* 135 Cal. Rptr. 2d 505, 515 (Cal. Ct. App. 2003) ("An interpretation rendering contract language nugatory or inoperative is disfavored."); *New York Life Ins. Co. v. Hollender*, 237 P.2d 510, 514-15 (Cal. 1951) (rejecting a party's interpretation of a clause because it would effectively nullify other clauses within the contract).

Given the foregoing canons of construction, the initial, disputed clause conceivably binds both parties, including the Lender, Crespo, to the exclusive jurisdiction of the pertinent California state and federal courts for claims arising out of the Loan Agreement—(1) "*Borrower* hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of [the pertinent California state and federal courts] in *any action or proceeding arising out of this Agreement*," and (2) "*each of the parties* hereto hereby irrevocably and unconditionally agrees that all claims *in respect of any such action or proceeding* shall be exclusively heard and determined in such [pertinent California state and federal courts]" (emphasis added).  While the first clause appears to bind only the "Borrower" (Smart Health), the second clause binds "each of the parties" (Smart Health and Crespo).  The phrase "in respect of such action or proceeding"— appearing in the second clause—refers to and incorporates "any action or proceedings arising out of this Agreement"—appearing in the first clause.  When read as a whole,

then, the entire sentence conceivably binds both parties to the exclusive jurisdiction of the listed California state and federal courts in cases arising out of the Agreement.

However, a subsequent sentence in Paragraph 14 serves as a proviso or exception that qualifies the foregoing interpretation as to the Lender, Crespo. *See Coburn v. Sievert*, 35 Cal. Rptr. 3d 596, 606 (Cal. Ct. App. 2005) ("Black's Law Dictionary defines 'proviso' to include a 'limitation, condition, or stipulation upon whose compliance a legal or formal document's validity or application may depend.'" (citing BLACK'S LAW DICTIONARY 1241 (7th ed. 1999)); *Jasper v. Davis*, 330 P.2d 870, 875 (Cal. Ct. App. 1958) (upholding proviso because "[a]nyone reading the resolution of intention would recognize paragraph 14 of the contract form exhibit thereto as a proviso or exception to the more general language that is found in paragraph 3 of the resolution."); *Kirkman v. AMC Film Holdings LLC*, No. BC672124, 2020 WL 4364279, at *6 (Cal. Super. July 22, 2020) ("Plaintiffs thus used the 'provided, however, that' clause in their contracts to constrain AMC Network's authority—while also confirming that AMC Network's authority was essentially unbounded *except* as set forth in the proviso.") (citations omitted); *c.f.*, *Simpson Strong-Tie Co. v. Gore*, 230 P.3d 1117, 1124 (Cal. 2010) ("It is a 'familiar' and 'longstanding' legal principle that 'when a proviso carves an exception out of the body of a statute or contract those who set up such exception must prove it.'" (quoting *Meacham v. Knolls Atomic Power Laboratory* 554 U.S. 84, 91 (2008))) (cleaned up); *The Press Democrat v. Sonoma Cnty. Herald Recorder*, 143 Cal. Rptr. 3d 481, 488 (Cal. Ct.

App. 2012) (same); *Jones v. Credit Auto Ctr., Inc.*, 188 Cal. Rptr. 3d 578, 585 (Cal. App. Dep't Super. Ct. 2015) (same).

> The ordinary purpose of a proviso or exception is to take out of a contract that which otherwise would have been included in it, as by narrowing the scope of a contract term, or to guard against misinterpretation. *In other words, the purpose of a proviso clause is to restrict or clarify the scope of what came before.*

17A C.J.S. Contracts § 474 (emphasis added) (footnotes omitted) (citing *Am. Cas. Co. of Reading, Pa. v. Myrick*, 304 F.2d 179, 184 (5th Cir. 1962) ("The purpose of an exception is to take something out of the contract which otherwise would have been included in it.") (citations omitted); *Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co.*, 773 F.3d 110, 115 (2d Cir. 2014) ("When a proposition is followed by a clause beginning with 'so long as,' the 'so long as' clause typically serves as a proviso, introducing a condition that narrows the broader initial proposition. . . . The use of such a proviso in a contract can indeed narrow the scope of a contract term, but it does so in a manner dictated by the contractual text.") (citations omitted); *Nat'l Cas. Co. v. Lockheed Martin Corp.*, 764 F. Supp. 2d 756, 760 (D. Md. 2011) ("The purpose of a proviso clause is to restrict or clarify the scope of what came before."); *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985) ("The ordinary purpose of an exception is to take something out of the contract which would otherwise have been included in it. . . . When the meaning of an

exception is reasonably certain, it must be given effect unless wholly repugnant to the provision intended to be limited by it.") (citations omitted)).[11]

As applicable in the case at bar, Paragraph 14 contains the following forum selection proviso on the heels of the afore-interpreted forum selection provision: "Nothing in this Agreement shall affect any right that Lender may otherwise have to bring any action or proceeding relating to this Agreement against Borrower or its properties in the courts of any jurisdiction." (Doc. 1-1 at 22). In the present context, "otherwise" means "in a different way," "in a different manner," or more precisely, "to the contrary." BLACK'S LAW DICTIONARY (11th ed. 2019); *Begay v. United States*, 553 U.S. 137, 144 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015) (defining "'otherwise'" to mean "'in a different way or manner'" (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1598 (1961))); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 751 (Tex. 2006) ("'Otherwise'" when used as an adverb means "'in a

---

[11] In further explication of the doctrine:

> Properly speaking, a proviso is a clause that introduces a condition by the word *provided*. A proviso "is introduced to indicate the effect of certain things which are within the statute but accompanied with the peculiar conditions embraced within the proviso." It modifies the immediately preceding language.
>
> Because of regular abuse of provisos, however, the rule that a proviso introduces a condition has become a feeble presumption. One now often finds *provided that* introducing not a condition to an authorization or imposition, but an exception to it, or indeed even an addition to it. And the authorization or imposition that it modifies is often found not immediately before but several clauses earlier.

Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 154 (1st ed. 2012) (Proviso Canon) (footnotes omitted).

different way or manner; in different circumstances . . . .'" (quoting WEBSTER'S NEW COLLEGIATE DICTIONARY 835 (9th ed. 1985)). Accordingly, the confluence of the terms "Nothing in this Agreement" with "otherwise" functions much like the common contract term "notwithstanding anything in this agreement to the contrary" to delineate a provision not restricted by any competing provision in the contract.[12] Hence, although the Loan Agreement's forum selection provision appertains to exclusive jurisdiction in California state and federal courts for cases "arising out of [the] Agreement," the Lender retains the right to file "any action or proceeding relating to this Agreement"—including actions "arising out of" the Agreement—in the courts of any jurisdiction.[13]

---

[12] *See, e.g., Camelart Ltd. v. StoneX Grp. Inc.*, No. 20-CV-7707, 2021 WL 2311967, at *5 (N.D. Ill. June 7, 2021):

> And importantly, the Notwithstanding Provision—which appears in the Agreement immediately after the Reasonable Period Provision—begins with the (unsurprising) phrase, "notwithstanding anything in this Agreement to the contrary." *Id.* (emphasis added). The word "notwithstanding" means "in spite of." *Soarus LLC v. Bolson Materials Int'l Corp.*, 905 F.3d 1009, 1012 (7th Cir. 2018) (interpreting Illinois law). It "implies the presence of an obstacle" and "in essence wipes out anything to the contrary." *Id.* (citing *Bd. of Educ. of Maine Tp. High School Dist. No. 207 v. Int'l Ins. Co.*, 799 N.E. 2d 817, 824 (Ill. App. Ct. 2003); *Cent. Ill. Pub. Serv. Co. v. Allianz Underwriters Ins. Co.*, 608 N.E. 2d 155, 157 (Ill. App. Ct. 1992)). As such, the phrase "notwithstanding anything in this Agreement to the contrary" makes clear that the right conferred on StoneX to liquidate Camelart's undermargined account is not confined by any competing provision in the Agreement, including the Reasonable Period Provision, which immediately precedes it. *See Bd. Of Educ. Of Main Twp. High Sch. Dist. No. 207*, 799 N.E.2d at 824 (reaching similar conclusion based on a contract's use of the phrase "[n]otwithstanding anything contained herein to the contrary").

[13] "[A]ny right … Lender may otherwise have" may also signal the external constraints imposed by pre-existing venue laws, such as 28 U.S.C. § 1391.

The foregoing conclusion rests upon proper interpretation of the term "relating to." As provided by applicable precedent, suits "relating to" an agreement encompass a broader range of causes of action than suits "arising out of" an agreement, and by extension, the term "relating to" absorbs the term "arising out of" within its ambit:

> [I]it was well established [by 2003] in both state and Ninth Circuit decisions that an arbitration provision that included both the "arising from" or "arising out of" type of language *and* a phrase such as "in connection with" or **"relating to" extended the scope** of an arbitration provision **to also encompass** tort claims having "'their roots in the relationship between the parties which was created by the contract'" . . . and **"every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract"** . . . , **whereas provisions using only** phrases such as **"arising out of"** or "arising from" were narrower in application and **extended only to disputes relating to the interpretation and performance of the agreement** . . . .

*Rice v. Downs*, 203 Cal. Rptr. 3d 555, 566 (Cal. Ct. App. 2016), *as modified on denial of reh'g* (June 23, 2016), *as modified* (June 28, 2016) (bold emphasis added) (citations omitted); *see also Ramos v. Superior Ct.*, 239 Cal. Rptr. 3d 679, 689 (Cal. Ct. App. 2018), *as modified* (Nov. 28, 2018) ("[A]rbitration clauses . . . that use the phrase 'arising under *or related to*' . . . have been construed more broadly. . . . *For a party's claims to come within the scope of such a clause, the factual allegations of the complaint 'need only 'touch matters' covered by the contract containing the arbitration clause.*'") (citations omitted, emphasis added).[14]

---

[14] As countenanced in one decision, disputes interpreting arbitration clauses bear relevance for the interpretation of forum selection provisions.

> Both the United States Supreme Court and the Fifth Circuit have noted the similarities between arbitration clauses and forum selection clauses and have applied the same enforceability analysis to both because an arbitration clause is, "in effect, a specialized

As extrapolated from the foregoing precedent, disputes "relating to" a contract embody claims bearing "a significant relationship to the contract," tracing "their origin or genesis in the contract," or "touch[ing] matters covered by the contract."  *See Vaughn v. Tesla, Inc.*, 303 Cal. Rptr. 3d 457, 466 (Cal. Ct. App. 2023), *reh'g denied* (Jan. 20, 2023), *review denied* (Apr. 12, 2023) ("It is well established . . . that when courts say that an arbitration agreement including 'relating to' is broad, it typically is because *it expands the reach of the agreement to encompass claims rooted in the . . . relationship*, even if the claims do not actually arise from the . . . contract itself.") (emphasis added); *id.* ("As noted, the inclusion of 'relating to' typically justifies applying arbitration agreements to claims that do not arise from the contract. In contrast, 'narrow clauses' stating only 'arising from' 'have generally been interpreted to apply only to disputes regarding the interpretation

---

kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S. Ct. 2449, 2457, 41 L. Ed. 2d 270 (1974); *Haynsworth* [*v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)] (rejecting the distinction between arbitration clauses and forum selection clauses for purposes of analyzing the enforceability of a forum selection clause).

*Smith v. Lucent Techs., Inc.*, No. CIV.A. 02-0481, 2004 WL 515769, at *8 n.33 (E.D. La. Mar. 16, 2004); *see also Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 n.7 (11th Cir. 2012) ("Although all of the cases we cite concern the application of equitable estoppel to contracts with arbitration clauses rather than forum-selection clauses, the equitable estoppel analysis is the same. Arbitration clauses are similar to forum-selection clauses." (citing *Scherk,* 417 U.S. at 519 ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause . . . ."))));  *c.f., Schmidt v. Trinut Farm Mgmt., Inc.*, 309 Cal. Rptr. 3d 877, 884 (Cal. Ct. App. 2023) ("Just as a petition to compel parties to arbitrate a dispute pursuant to a contractual provision 'is in essence a suit in equity to compel specific performance' of an arbitration provision, a motion to enforce a forum selection clause is, in essence, a means of compelling performance of the parties' contractual obligation to resolve disputes in a different forum." (quoting *Frog Creek Partners, LLC v. Vance Brown, Inc.*, 141 Cal. Rptr. 3d 834, 846 (Cal. Ct. App. 2012))) (cleaned up).

and performance of the agreement.'") (citation omitted); *Allstate Ins. Co. v. Loo*, Cal. Rptr. 2d 541, 543 (Cal. Ct. App. 1996), *as modified* (Aug. 1, 1996) (holding that lease's attorney's fee provision applicable to "any legal action brought by either party to enforce the terms hereof or relating to the demised premises" "*encompasse[d] any action—whether in contract or in tort—which relates to* the leased premises") (emphasis added).[15]

---

[15] *See also Dream Theater, Inc. v. Dream Theater*, 21 Cal. Rptr. 3d 322, 326 n.1 (Cal. Ct. App. 2004) ("An arbitration clause that *covers any claim arising out of or relating to the contract* or the breach thereof is very broad…. But omission of the phrase *or relating to* has been found to exclude arbitration of some claims.") (emphasis in original, internal citations and quotation marks omitted); *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018), *holding modified by Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023) (remarking that "forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." (quoting *John Wyeth & Bro. Lab. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.))); *Evans v. Bldg. Materials Corp. of Am.*, 858 F.3d 1377, 1381 (Fed. Cir. 2017) (declaring that 'arising under' language is narrower in scope than language, such as 'relating to,' under which a claim may be arbitrable if it has a 'significant relationship' to the contract, regardless of whether it arises under the contract itself." (quoting *Long v. Silver*, 248 F.3d 309, 316–17 (4th Cir. 2001))) (other citations omitted); *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340–41 (11th Cir. 2012) ("A claim 'relates to' a contract when 'the dispute occurs as a fairly direct result of the performance of contractual duties.' *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001). . . . The phrase 'related to' marks a boundary by indicating some direct relationship.' *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011)."); 1 CORBIN ON CONTRACT DRAFTING § 22.03 (2022) ("If an arbitration provision states that all claims 'arising from' or 'arising out of' the contract must be arbitrated, this is generally regarded as a narrow clause—usually limited to disputes about the contract's interpretation and performance—and there must be a direct relationship between the claim and a contract's terms and provisions. . . . In contrast, the words 'relating to' are generally regarded as broad in scope and have been held to apply to claims having a significant relationship to the contract but without regard to whether the claim sounds in contract or tort.") (footnotes omitted); *c.f.*, *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 855 P.2d 1263, 1271 (Cal. Ct. App. 1993) ("'Related' is a commonly used word with a broad meaning that encompasses a myriad of relationships. For example, a leading legal dictionary defines 'related' to mean 'standing in relation; connected; allied; akin.' (Black's Law Dict. (6th ed. 1990) p. 1288, col. 1.) . . . In a coverage case (not involving a claim limitation), the court observed that 'related' can denote a causal connection as well as the 'notion of similarity.' (*O'Doan v. Insurance Co. of North America* (1966) 243 Cal.App.2d 71, 78, 52 Cal. Rptr. 184.)"); *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) (A "'law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983))); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of [relating to] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed. 1979) . . . ."); *AQuate II*

Read in conjunction with the Loan Agreement's forum selection provision, Crespo could bring a claim both "arising out of" *and* "relating to" the Agreement in the courts of any jurisdiction.  That is, the category of claims that relate to the Agreement include claims that arise under it.[16]

---

*LLC v. Myers*, __ F.4th __, No. 22-12669, 2024 WL 1901504, at *3 (11th Cir. May 1, 2024) ("The Oxford English Dictionary defines 'relate to' as 'to have some connection with; to stand in relation to.' *Relate*, Oxford English Dictionary (online ed.) https://perma.cc/FM2V-S4ZW. And Black's Law Dictionary defines 'related' as 'connected in some way; having relationship to or with something else.' *Related*, Black's Law Dictionary (11th ed. 2019). It is no secret that the ordinary meaning of this term is 'a broad one.' . . . That is true across a range of contexts. In fact, 'Congress characteristically employs the phrase to reach any subject that has a connection with, or reference to, the topics a statute enumerates.' *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87, 95–96 (2017) (quotation omitted). **It is hard, candidly, to think of a more capacious term to use in defining the coverage of a provision**.") (citation omitted, cleaned up) (emphasis added); *United States v. Hill*, 643 F.3d 807, 875 (11th Cir. 2011) ("the participial phrase 'related to' is a broad one"); *Moshea v. Nat'l Transp. Safety Bd.,* 570 F.3d 349, 352 (D.C. Cir. 2009) ("Without getting into a metaphysical discussion of the meaning of the phrase 'related to,' it suffices here to say that the words 'related to' are broad."); *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998) ("[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract.").

[16] One may object to the notion that claims "relating to" a contract include within their ambit claims "arising out of" the contract due to the widespread prevalence of agreements joining the language together.  *See Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (referring to "the phrase 'arising out of or relating to,' [as] the standard language recommended by the American Arbitration Association").  That is, construing the terms "relating to" as incorporating "arising out of" appears to render redundant the phrase "arising out of or relating to" in violation of the surplusage canon:

> Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant.  If a provision is susceptible of (a) a meaning that give it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred.

Scalia and Garner, Reading Law, at 176 (Surplusage Canon) (footnote omitted); *see* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *Yahoo Inc. v. Nat'l Union Fire Ins. Co. etc.*, 519 P.3d 992, 999 (Cal. 2022) ("Courts will favor an interpretation that gives meaning to each word in a contract over an interpretation that makes part of the writing redundant.").  Although the contract under dispute does not join the phrases "arising out of" and "relating to," the numerous contracts

which do so counsel pause as to construing "relating" to as encompassing "arising out of" given the surplusage canon.

However, as provided by Cal. Civ. Code § 1641, the surplusage canon gives way to reasonable practicability when warranted.  *See* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."); *Ameron Internat. Corp. v. Ins. Co. of State of Pennsylvania*, 242 P.3d 1020, 1024 (Cal. 2010), *as modified* (Jan. 19, 2011) ("'The clear and explicit' meaning of [contract] provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.,* § 1644), controls judicial interpretation."); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 485 F. Supp. 3d 1225, 1230 (C.D. Cal. 2020) (A "court should 'give effect to every part of the policy with each clause helping to interpret the other.' . . . However, this is not an inflexible rule that a court must follow when the outcome would be impracticable." (citations omitted)); *Flintkote Co. v. General Acc. Assur. Co.*, 410 F. Supp. 2d 875, 890 (N.D. Cal. 2006) (observing that in "adopt[in]g the only reasonable construction of the contract," "[t]he fact that some redundancy results is not fatal"); Scalia and Garner, Reading Law, at 176 ("Put to a choice, however, a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage.  So like all other canons, this one must be applied with judgment and discretion, and with careful regard to context.").

Applying the foregoing authorities, interpreting the terms "relating to" as incorporating "arising out of" does not run afoul of the surplusage canon when an agreement joins the phrases together.  Entities use the phrase "arising out of or relating to" in a specific, legal manner, thus evincing an adherence to practicability and a technical meaning:

> "'As a general rule of construction, the parties are presumed to know and to have had in mind all applicable laws extant when an agreement is made. These existing laws are considered part of the contract just as if they were expressly referred to and incorporated.'. . . Existing law includes the common law of the state."

*Rice v. Downs*, 203 Cal. Rptr. 3d 555, 565–66 (Cal. Ct. App. 2016) (quoting *Progressive West Ins. Co. v. Superior Court*, 37 Cal. Rptr. 3d 434 (Cal. Ct. App. 2005)), *as modified on denial of reh'g* (June 23, 2016), *as modified* (June 28, 2016); *see also Mediterranean Enterprises*, 708 F.2d at 1464 (referring to "the phrase 'arising out of or relating to,' [as] the standard language recommended by the American Arbitration Association").  And in California, the law provides that a "'broad' clause includes those using language such as '*any claim* arising from or *related to* this agreement.'"  *Rice*, 203 Cal. Rptr. at 563 (citation omitted).  Therefore, when the phrase "arising out of or relating to" appears in a particular instrument, it signifies a broadly-interpreted clause that does not require disaggregation and interpretation of its constituent terms given the prevalence of caselaw interpreting the phrase as a whole.  *See, e.g.*, *id.* at 564 (A "clause agreeing to arbitrate 'any controversy arising out of *or relating to* this agreement' . . . might thus cover misconduct arising out of the agreement as well as contractual issues.") (citation omitted, cleaned up); *Fagelbaum & Heller LLP v. Smylie*, 95 Cal. Rptr. 3d 252, 263 (Cal. Ct. App. 2009) (holding the phrase "arising out of or relating to is "broad enough to include related controversies that are not expressly described in [an] agreement").

Paragraph 18(h) of the Agreement also indicates the Lender retains wide-ranging latitude to sue in venues other than the pertinent California state and federal courts. The provision states, in relevant part, "All rights and remedies of the Lender existing hereunder are *cumulative to*, and not exclusive of, any rights or remedies otherwise available." (Doc. 1-1 at 24) (emphasis added).  When read in conjunction with the Paragraph 14 clause "Nothing in this Agreement shall affect any right that Lender may otherwise have," the Agreement affords the Lender broad latitude in selecting a forum.

In accordance with the foregoing interpretation, the undersigned deems the forum selection provision and attendant proviso asymmetrical: while the Borrower may only bring claims arising out of the Agreement in the pertinent California state and federal courts, the Lender may bring claims relating to (including those arising out of) the Agreement in the courts of any proper venue.  Importantly, such asymmetrical contractual provisions generally merit enforceability so long as they do not present unconscionable terms.  *Larsen v. Citibank FSB*, 871 F.3d 1295, 1381 (11th Cir. 2017) (applying Washington law to conclude "asymmetry alone does not amount to substantive unconscionability"); *see also Desert Autosports LLC v. Auto Fin. Corp.*, 2013 WL 4231151, at *1 (D. Ariz. Aug. 14, 2013) (declining to strike a "one-sided" forum selection clause in the absence of evidence of "fraud or overreaching"); *Great Am. Ins. Co. of New York v. Nippn Yusen Kaisha*, 2013 WL 3850675, at *5 (N.D. Cal. May 10, 2013) ("[F]orum selection clauses do not need to provide reciprocal and equal benefits to contracting parties to be enforceable").

Importantly, the foregoing construal does not pose a novel interpretation.  For example, in *Garcia v. Top Rank, Inc.*, No. ED CV14-00928 JAK (SPx), 2014 WL 12791946 (C.D. Cal. Sept. 9, 2014), the court fielded the defendant's motion to transfer the action to the District of Nevada due to forum selection clauses contained within several contracts regarding boxing matches.  The contracts contained two versions of a forum selection provision, which the court deemed as effecting exclusive venue in the District of Nevada:

> *Jurisdiction and venue in any action shall lie solely within the Nevada state courts in and for the County of Clark and, if applicable, the United States District Court for the District of Nevada.* Any legal action or proceeding with respect to challenges to any arbitration award, any request for injunctive relief, or in any other legal matter related to this Agreement must be brought in the courts of the State of Nevada or of the United States District Court, District of Nevada, located in Clark County, Nevada. *Nothing herein shall affect the right of Promoter to commence legal proceeding in any other court of competent jurisdiction.*

> *The exclusive jurisdiction and venue in any action shall lie solely within the Nevada state courts in and for the County of Clark and, if applicable, the United States District Court for the District of Nevada.* Any legal action or proceeding with respect to challenges to any arbitration award, any request for injunctive relief, or in any other legal matter related to this Agreement must be brought in the courts of the State of Nevada or of the United States District Court, District of Nevada, located in Clark County, Nevada. *Nothing herein shall affect the right of Promoter to commence legal proceeding in any other court of competent jurisdiction.*

*Id.* at *3 (cleaned up, emphasis added); *see also id.* at **6-7 ("The forum selection clauses in the Bout Agreements are mandatory and exclusive . . . .  In six of the Bout Agreements, the clauses do not include the word 'exclusive.' . . .  However, the exclusivity of the forum designated by the remaining language is controlling. It states

that jurisdiction and venue are 'solely' in one forum, and that legal actions or proceedings related to any legal matter 'must be brought' in that forum.").

Nevertheless, the court interpreted the foregoing provisions as affording the defendant (who was the Promoter named in the contracts) the right to pursue actions in a venue different from the Nevada state and federal courts, whereas the contracts obligated the plaintiff to sue in Nevada. *Id.* at *7. The court thereafter rejected plaintiff's argument the asymmetrical forum selection provisions were unenforceable. *Id.* at **9-10.

The same interpretation ensued in *Mao v. Sanum Invs., Ltd.*, No. 2:14-CV-00721-RCJPAL, 2014 WL 5292982 (D. Nev. Oct. 15, 2014), where the court interpreted the following forum selection provision:

> *Each party hereto hereby unconditionally and irrevocably submits, for himself, itself and its property, to the exclusive jurisdiction of the courts of Lao PDR (collectively the "Designated Courts"), over any action arising out of or relating to this Agreement . . . (a "Designated Action"). All claims with respect to any Designated Action shall be heard and determined in a Designated Court. Except as herein expressly provided to the contrary, no party hereto shall commence any Designated Action except in a Designated Court.... Notwithstanding the foregoing Bridge and/or Sanum shall have the right to bring any Designated Action in the courts of any other jurisdiction to the extent either of them deems it necessary, appropriate, or desirable (in its sole and absolute discretion) in connection with any Designated Action.*

*Id.* at *2 (emphasis added). On defendants' (Bridge and Sanum) motion to dismiss plaintiff's complaint due to the forum selection clause, the court agreed the clause restricted plaintiff to suing in the country of Laos but allowed defendants to file suit in other jurisdictions. *Id.* at *2. The court rejected plaintiff's entreaty to disavow the

provision because "[u]nequal contract terms and unequal bargaining power will not invalidate a forum-selection clause." *Id.* (citations omitted).

Other features of Paragraph 14 support the construal that Crespo may maintain this action in this venue. The paragraph provides that the Borrower also submits to the exclusive jurisdiction of the pertinent courts "for recognition or enforcement of any judgment relating [to] or arising [from]" the Agreement (the "judgment phrase"). (Doc. 1-1 at 22). First, Paragraph 14 introduces the judgment phrase with the word "or," indicating it stands separate from the phrase immediately preceding it, "any action or proceeding arising out of this Agreement." Second, it only binds the Borrower, indicating the draftees contemplated limiting some restrictions to Smart Health. Third, in the first instance one must accord the judgment phrase an independent purpose, and it would be superfluous if the judgment phrase only applies to judgments pertaining to "any action or proceeding arising out of this Agreement": any action or proceeding would result in a court judgment, so there exists no need to include a separate provision mandating venue for the judgments resulting from such lawsuits. Therefore, the judgment phrase must refer to judgments relating to or arising from the Agreement that were rendered by courts other than the identified California state and federal courts. And that the judgment phrase includes the terms "arising therefrom" further establishes that such lawsuits may be levied in venues other than the pertinent California state and federal fora specified in Paragraph 14, thus buttressing the conclusion that the exclusivity provision only restricts the Borrower's options as to venue.

Indeed, another asymmetry within Paragraph 14 buttresses the foregoing conclusion. As reflected, Paragraph 14 provides the "Borrower hereby irrevocably and unconditionally waives . . . any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any court referred to in this Section 14." (Doc. 1-1 at 22). The foregoing provision establishes that the Borrower could not object to an improper venue (as understood in 28 U.S.C. § 1406) as to any lawsuit contemplated by Paragraph 14. The next sentence provides that neither of the parties can raise the ground of inconvenience (as understood in 28 U.S.C. § 1404) as to any case covered by Paragraph 14: "Each of the parties hereto hereby irrevocably waives . . . the defense of any purported inconvenient forum to the maintenance of such action or proceeding in any such court." (*Id.*) Hence, the Borrower cannot object to any venue for an action relating to or arising out of the Agreement—whether for inconvenience or improper forum— whereas the Paragraph restricts the Lender from doing so only on the basis of inconvenience. Therefore, the juxtaposition of the foregoing two sentences demonstrates an asymmetry between the parties as to the challenges that may be raised as to venue, which reinforces the finding regarding the asymmetry as to the forum selection provision.

Moreover, the foregoing restrictive clause pertaining only to the Borrower further strengthens the interpretation of the forum selection clause. As noted, the clause provides the "Borrower hereby irrevocably and unconditionally waives . . . any

objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any court referred to in this Section 14" (hereafter "objection-waiver provision"). (*Id.*)  As countenanced in pertinent authority, "[f]orum-selection clauses intending to waive venue usually contain provisions expressly prohibiting any objection to it." *Accelerant Specialty Insurance Co. v. Tran*, No. 6:23-cv-134-PGB-LHP, 2023 WL 7323081, at *3 (M.D. Fla. Nov. 7, 2023) (citing *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1296 (11th Cir. 2022) (finding waiver where forum-selection clause required defendant to "waive any objection [he] might have to either the jurisdiction of or venue in those courts")).  Hence, the authority suggests that contracts couple forum selection provisions with provisions precluding objections to the applicable venue.  As applicable in these circumstances, the afore-cited, objection-waiver provision expressly restricts only the Borrower from objecting on the basis of improper venue as to the California state and federal fora, which indicates the exclusive venue clause only applies to that particular entity.[17]

In conclusion, the undersigned concludes the Agreement does not require Crespo to bring his contract claims arising out of the Agreement in the designated

---

[17] If the "coupling" delineated in *Accelarant* does not constitute a general phenomenon present in forum selection clauses, then the objection-waiver provision supports Crespo's position in a different manner.  If the forum selection clause's "arising out of" terms provided for exclusive venue in the pertinent California state and federal fora, there would ensue no need for a separate provision precluding the Borrower from objecting to those fora as improper venues.  That is, agreeing to an exclusive forum necessarily carries a waiver of the right to object on the grounds of improper venue as to that forum.  Therefore, the inclusion of the objection-waiver provision as to actions "arising out of" the Agreement necessarily contemplates the maintenance of such actions in venues other than the pertinent California state and federal courts.

California state or federal court.  Rather, the Agreement affords Crespo broad leeway to bring claims "relating to [the] Agreement" in the courts of any jurisdiction.  The Northern District of Alabama thus remains an appropriate venue as to Count I.

**B. The Court Deems Venue for Counts II, III, and V Proper Because the Loan Agreement Contains a Valid Waiver Provision as to Those Claims and a Substantial Part of the Events or Omissions Giving Rise to the Claims Occurred in Alabama.**

Defendants deem venue improper in the Northern District of Alabama as to Counts II, III, and V (vis-à-vis the $110,000 loan agreement) because no substantial part of the events regarding those claims occurred in Alabama.  (Doc. 4 at 12-14; doc. 13 at 10-11).  In support of lodging venue in this district, Crespo argues a substantial part of the events or omissions giving rise to the claims occurred here: "Mr. Crespo lives in Alabama, he sent funds from Alabama, and he should have received repayment from Defendants in Alabama."  (Doc. 11 at 12).  Additionally, Crespo claims "Smart Health … does business in Alabama."  (Doc. 1-1 at 3).

As an initial matter, the $110,000 agreement appears to fall under the purview of the $150,000 Loan Agreement's valid forum selection provision, which allows Crespo to "bring any action or proceeding *relating to* this Agreement against [Smart Health] or its properties in the courts of any jurisdiction."  (Doc. 1-1 at 22 (emphasis added)).  As discussed previously, the term "relating to" reflects a much broader scope than "arising out of."  In particular, claims "relating to" a contract may derive directly or indirectly from the relationship regulated by the contract.  *See Rice*, 203 Cal. Rptr. 3d at 566; *Ramos*,

239 Cal. Rptr. 3d at 689.[18]   Smart Health—through Nuñez—allegedly requested the $110,000 loan as an "additional sum" to support the company's operations.  (Doc. 11 at 12; *see also* Doc. 1-1 at 4 ("In January 2022, Smart Health asked Mr. Crespo to loan it *another* $110,000" (emphasis added))). The second loan appears to substantiate—and relate to—the same contractual relationship formed in the first Loan Agreement. Therefore, Crespo retains the right to bring Counts II, III, and V in any proper venue.

Furthermore, another provision in Paragraph 14 of the Loan Agreement forecloses the Defendants' objection to this venue: "Borrower hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any court referred to in this Section 14."  (Doc 1-1 at 22).   A party may intentionally waive an objection to an improper venue.   *See Woodroffe v. Florida,* 611 F. App'x 679, 680 (11th Cir. 2015) ("Improper venue can be waived . . . ." (citing *Manley v. Engram*, 755 F.2d 1463, 1468 (11th Cir. 1985) ("[T]he right to object to improper venue may be waived."))); *Accelerant Specialty Insurance Co. v. Tran*, No. 6:23-cv-134-PGB-LHP, 2023 WL 7323081, *3 (M.D. Fla. Nov. 7, 2023) ("Forum-selection clauses intending to waive venue usually contain provisions expressly prohibiting any objection to it." (citing *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1296 (11th Cir. 2022) (finding waiver where forum-selection

---

[18] However, the claim likely does not "arise out of" the Agreement as it does not narrowly concern a breach of the express terms of the contract.

clause required defendant to "waive any objection [he] might have to either the jurisdiction of or venue in those courts"))). Therefore, the phrase "to the fullest extent permitted by applicable law" included in the provision at issue does not preclude an express waiver of 28 U.S.C. § 1391(b).

Like the afore-discussed forum selection provision, the parties do not contest the validity of the waiver provision, only its scope. As aforementioned, Crespo's claims regarding the $110,000 loan agreement appear to "relate to" the $150,000 Loan Agreement. Moreover, "any court referred to in this Section 14" signals state and federal California courts *and* "the courts of any jurisdiction," because Section 14 explicitly mentions both. Because Paragraph 14 comports to waive Smart Health's right to object to improper venue in claims relating to the Loan Agreement brought by the Lender in any venue, it contractually precludes Smart Health from objecting to improper venue in the present case.

Even in the absence of an express contractual provision, and as particularly applicable to Defendant Nuñez (because he was not a signatory to the agreement on his behalf), venue lies proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  A plaintiff need only present a prima facie showing that its chosen forum constitutes a proper venue.  *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (quoting *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988)).

"A district court may decide whether a plaintiff's choice of forum is proper by reference to factual allegations made in the plaintiff's complaint . . . and the court need not conduct an evidentiary hearing."  *Goodwyn, Mills & Cawood, Inc. v. Black Swamp, Inc.*, 956 F. Supp. 2d 1323, 1326–27 (M.D. Ala. 2012) (citing *Home Ins.*, 896 F.2d at 1355). "Further, '[t]he facts as alleged in the complaint are taken as true to the extent they are uncontroverted by [the] defendant['s] affidavits.'"  *Home Ins.*, 896 F.2d at 1355 (alterations in original) (citation omitted).

Regarding § 1391(b)(2), applicable here, proper venue may exist in more than one district.  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).  That said, "[o]nly the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered."  *Id; see also Morgan v. N. Miss. Med. Ctr.,* 403 F. Supp. 2d 1115, 1122 (S.D. Ala. 2005) ("[U]nder § 1391, a plaintiff does not have to select the venue with the *most* substantial nexus to the dispute, as long as she chooses a venue where a substantial part of the events giving rise to the claim occurred.").

Notably, the venue statute protects defendants.  *Jenkins*, 321 F.3d at 1371.  That is, Congress "'meant to require courts to focus on relevant activities of the defendant,

not of the plaintiff,'" in determining the propriety of a chosen venue. *Id.* at 1371-72 (quoting *Woodke v Dahm*, 70 F.3d 983, 985 (8ᵗʰ Cir. 1995)); *Vulcan Mktg. v. United Furniture Indus. Bolivia, S.A.,* 2010 WL 11566476, at *5 (N.D. Ala. Feb. 1, 2010) ("[I]n determining whether venue is proper, courts must focus on the relevant activities of the defendant rather than the plaintiff."). To this end, the Eleventh Circuit has rejected a "minimum contacts"-style personal jurisdiction analysis for discerning a proper venue. *Jenkins*, 321 F.3d at 1372. Rather, courts may "consider[] as relevant only those acts and omissions [by the defendant] that have a close nexus to the wrong." *Id.*; *see also Minyobe v. Wilson*, No. 1:15–cv–654–WSD, 2015 WL 6873555, at *3 (N.D. Ga. Nov. 9, 2015) (applying *Jenkins* to conclude "Plaintiff has failed to sufficiently allege that *Defendants'* actions in the Northern District of Georgia, if any, give rise or have a close nexus to Plaintiff's claims" (emphasis in original)).

In *Jenkins*, a breach of contract action, the Eleventh Circuit deemed the location of the breach the "most important[]" venue consideration. *Jenkins*, 321 F.3d at 1372-73. It also considered the location of the contract's execution and contemplated performance. *Id.*

In the present case, the Complaint incites an inference Crespo expected payment where he resides, Madison County, Alabama, which situates within the Northern District of Alabama. (Doc. 1-1 at ¶¶ 1, 14). *See Altec Cap. Servs., LLC v. Premier Equip. Rental & Sales, LLC*, No. 2:13-CV-1540-VEH, 2014 WL 99072, at *6 (N.D. Ala. Jan. 9, 2014) ("Altec claims that the defendants breached the contracts by failing to send the

necessary payments to their Birmingham office. In other words, the defendants' alleged failure to pay Altec the prescribed contractual amounts in Birmingham has the 'closest nexus to the wrong' in this action." (quoting *Jenkins Brick,* 321 F.3d at 1372)) (cleaned up); *see also Wall v. Corona Cap., LLC*, 221 F. Supp. 3d 652, 658 (W.D. Pa. 2016), *aff'd*, 756 F. App'x 188 (3d Cir. 2018), *as amended on denial of reh'g* (Dec. 28, 2018) (ruling venue proper in the Western District of Pennsylvania because defendant "communicated to the [plaintiffs'] financial advisor and the [plaintiffs] in Pennsylvania, the [plaintiffs] paid their consideration for the contract from Pennsylvania, and [d]efendants agreed to send payments to Pennsylvania."); *Concesionaria DHM, S.A. v. International Finance Corp.*, 307 F. Supp. 2d 553, 558 (S.D.N.Y. 2004) (delineating those decisions that deem a party's breach occurs in the place where payment was due) (citing *Saltzman v. La. Auction Exch., Inc.*, 997 F. Supp. 537, 541 (S.D.N.Y. 1998) (identifying as support for New York venue fact that "payment under the terms of the letter agreement was due to plaintiff in New York"); and *Nova Int'l, Inc. v. Am. Express Bank, Ltd.*, No. 94 Civ. 8536, 1996 WL 39317, at *8 (S.D.N.Y. Jan. 31, 1996) (finding failure to issue letter of credit and transfer funds to plaintiff's account in New York City sufficient to establish venue)). Therefore, the Complaint depicts substantial elements of Crespo's breach-of-contract and guaranty claims occurred in this district.

Count V avers the unjust possession of loaned funds belonging to Crespo, and pursuant thereto, the Defendants were enriched in California, where they purportedly received the wire transfer. Nonetheless, the means by which Defendants allegedly

became unjustly enriched involved actively soliciting Crespo's investments while he resided in Alabama, which "suffices to meet the substantiality test and establish[es] venue for this claim." *Astor Holdings, Inc. v. Roski*, No. 01 CIV. 1905, 2002 WL 72936 at *10 (S.D.N.Y. 2002); *see also id.* ("[W]hile the enrichment of the Defendants would occur in California, the means that were to accomplish that enrichment involved the undermining of Plaintiffs' venture in New York.").

Notably, both breach and solicitation constitute actions taken *by the defendant*, not the plaintiff, satisfying *Jenkins*. 321 F.3d at 1371-72. On one hand, Smart Health allegedly received funds in California and failed to repay those funds in California. On the other hand, Smart Health allegedly solicited funds from Crespo in Alabama and failed to repay funds due in Alabama. Given the above considerations, the court deems both California and Alabama proper venues.

## III.   THE COURT DECLINES TO TRANSFER THE CASE TO THE CENTRAL DISTRICT OF CALIFORNIA.

Defendants argue the doctrine of *forum non conveniens* should necessitate transfer of the entire case to the Central District of California. Under the doctrine of *forum non conveniens*, a district court may decline to exercise its jurisdiction when a foreign forum appears better-suited to adjudicate the dispute. *See Kolawole v. Sellers*, 863 F.3d 1361, 1369 (11th Cir. 2017). The "central purpose" of *forum non conveniens* constitutes ensuring that a trial is convenient. *Id.* (citation and internal quotation marks omitted).

However, "[t]he common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n. 2 (1994)).  Accordingly, the doctrine of *forum non conveniens* does not apply when the proposed, more-convenient forum is another federal court.  *See, e.g., Trans Am Worldwide, LLC v. JP Superior Sols., LLC*, No. 4:17CV560-MW/CAS, 2018 WL 3090394, at *5 (N.D. Fla. Apr. 30, 2018) ("*[F]orum non conveniens* doesn't apply where the alternative forum is another federal district.") (citations omitted); *Waterproof Gear, Inc. v. Leisure Pro, Ltd.*, No. 808-CV-2191-T-33MAP, 2009 WL 1066249, at *5 (M.D. Fla. Apr. 20, 2009) ("Because the alternative forum is the Southern District of New York, a sister federal court, dismissal for *non conveniens* is not an applicable remedy.").  While the doctrine of *forum non conveniens* once allowed for cases to be transferred between district courts, this function "has been superseded by 28 U.S.C. § 1404(a)."  *Opus Nw. Constr. Corp. v. Opus Communities, Inc.*, No. 05-60366-CIV, 2006 WL 8432125, at *2 n.1 (S.D. Fla. Mar. 21, 2006) (citation omitted); *see, e.g., Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717 (7th Cir. 2002) ("[W]ith respect to cases wholly within the system of U.S. federal courts, the doctrine [of *forum non conveniens*] has been largely replaced by the transfer of venue statute, 28 U.S.C. § 1404(a)....") (citations omitted).

The court will construe Defendants' *forum non conveniens* entreaty as a measure seeking a transfer of venue pursuant to 28 U.S.C. § 1404.  Section 1404—governing change of venue—provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See Piper Aircraft Co v. Reyno*, 454 U.S. 235, 253 (1981) (noting Section 1404(a) "was drafted in accordance with the doctrine of *forum non conveniens*" to "permit change of venue between federal courts.").

As an initial matter, Section 14 of the Loan Agreement contains the following waiver provision discussed previously: "Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of any purported inconvenient forum to the maintenance of such action or proceeding in any such court." (Doc. 1-1 at 22).  This language purports to bar the parties from presenting arguments alleging inconvenient forum as to (1) claims arising out of the Loan Agreement brought by the Borrower in a California state or federal court and (2) claims relating to the Loan Agreement brought by the Lender in the courts of any jurisdiction. Because neither party disputes the validity of this provision, the court presumes the Borrower—whether on the grounds of inconvenience or improper forum—cannot object to the Lender's choice of venue for an action relating to or arising out of the

Agreement.[19] As discussed previously, Count I of Crespo's Complaint arises under the agreement, and Counts II, III, and V appear to relate to the Agreement.

Even if the Borrower could lodge an objection on the basis of a purportedly inconvenient venue, § 1404(a) discourages transfer of the case to the Central District of California. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." Yet, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (internal quotation marks omitted) (citation omitted). These considerations include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel*, 430 F.3d at 1135 n.1. "The decision of whether a case should be transferred under § 1404(a) is an individualized case-by-case consideration of convenience and

---

[19] Even if the parties disputed the waiver provision's validity (they do not), this court need not decide that issue. Indeed, "there is a 'long-approved practice of permitting a court to transfer a case *sua sponte* under the doctrine of *forum non conveniens*, as codified at 28 U.S.C. § 1404(a) … so long as the parties are first given the opportunity to present their views on the issue.'" *Tazoe v. Airbus S.A.S.,* 631 F.3d 1321, 1336 (11th Cir. 2011) (quoting *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986)). *See also Piper Aircraft,* 454 U.S. at 253 (noting "[d]istrict courts [are] given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*.").

fairness." *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003) (citations omitted).

In rendering a § 1404(a) determination, courts first consider whether the plaintiff could have brought the action in the proposed forum. *Cook v. Publix Supermarkets, Inc.*, 7:19-cv-01087-LSC, 2020 WL 13157798, at *1 (N.D. Ala. Apr. 24, 2020). The Central District of California maintains original jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332: Crespo is a citizen of Alabama, Smart Health is a Delaware corporation with its principal place of business in California, and Nuñez is a citizen of California. (*See* Doc. 1 at 3). In addition, Crespo seeks a judgment against Smart Health and Nuñez in an amount above $75,000, satisfying the amount-in-controversy requirement. (*Id.*). Furthermore, California may exercise personal jurisdiction over Defendants, as an individual defendant's state of citizenship and a corporation's principal place of business provide appropriate bases for the exercise of jurisdiction. 28 U.S.C. § 1332(c)(1); *Carmouche v. Tamborlee Management, Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (citing *Daimler AG v. Bauman,* 571 U.S. ---- (2014)). Finally, venue appears proper in the Central District of California, because substantial events giving rise to the claims occurred in that location. In particular, Defendants' alleged acceptance of the $110,000 loan and subsequent unjust enrichment occurred in California.

As the foregoing precedent clearly portrays, a court must generally afford deference to a plaintiff's choice of forum. In addition, Paragraph 14 of the Loan Agreement allows Crespo to bring claims relating to the Agreement in any venue. The

undersigned stands loath to disturb the parties' express contractual choice, and the election thereto by Crespo.

The balance of the § 1404 factors do not warrant transfer of this case. In particular, the following factors fall in equipoise as to the most efficient and fair forum: the convenience of the witnesses, the location of relevant documents and the relative ease of access to sources of proof, the convenience of the parties, the locus of operative facts, the availability of process to compel the attendance of unwilling witnesses, the relative means of the parties, and trial efficiency and the interests of justice. That is, neither party bears an advantage in the inquiry at bar as to the foregoing considerations.

As for the forum's familiarity with the governing law, California law applies to Count I, whereas Alabama law applies to the remaining three counts. By a matter of sheer numbers, that most of the claims fall under Alabama law places this forum at an advantage regarding this factor. Nevertheless, the probative force of this factor diminishes with the observation federal judges are deemed competent in the assessment and application of law generally.[20]

---

[20] "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. Of Texas*, 571 U.S. 49, 62 (2013). That said, in contexts involving a forum-selection provision, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59-60 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

According to the Supreme Court's modified § 1404(a) analysis in the presence of a valid forum selection provision, courts must not consider arguments about the plaintiff's choice of forum. *See id.* at 63-64 ("[W]hen a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its

## CONCLUSION

In summary, the court **DISMISSES** Count IV because it fails to state a claim for which relief may be granted. Moreover, the $150,000 Loan Agreement's valid forum selection provision allows the Lender to bring all claims in the Northern District of Alabama.  In the event the Loan Agreement governs only Count I, Alabama constitutes a proper venue for the remaining claims because a substantial part of the events giving rise to the claim occurred in this location.  Thus, to avoid piecemeal litigation, the court declines to transfer the case to the United States District Court for the Central District of California.  Crespo may move forward with Counts I, II, III, and V in this court.

The court **ORDERS** Defendants to file a responsive pleading to Plaintiff's Complaint at or within 14 days of entry of this opinion.

---

'venue privilege' before a dispute arises. Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed."). Moreover, the court cannot evaluate arguments regarding the interests of the parties, as "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 17–18 (1972).  Therefore, the court may only consider public-interest factors, which "rarely defeat a transfer motion." *Atlantic Marine,* 571 U.S. at 64.

Of course, the foregoing doctrine does not apply to the present circumstances because the mandatory forum selection provision binds Smart Health, not Crespo. *See Atlantic Marine,* 571 U.S. at 63-64 ("[W]hen a plaintiff *agrees* by contract to bring suit *only in a specified forum* . . . the plaintiff has effectively exercised its 'venue privilege' before a dispute arises.") (emphasis added); *see also In re Howmedica Osteonics Corp.,* 867 F.3d 390, 404 (3d Cir. 2017) (The "court assumes that *Atlantic Marine* applies to parties who agreed to forum-selection clauses . . . ."); *U.S. ex rel. MDI Services, LLC v. Federal Ins. Co.,* No. 5:13–cv–2355–AKK, 2014 WL 1576975, at *3 (N.D. Ala. Apr. 17, 2014) ("[K]eeping a case in the plaintiff's chosen forum despite a permissive forum-selection clause would not unnecessarily disrupt the parties settled expectations.  Accordingly, the considerations relevant to altering the § 1404(a) analysis for mandatory forum-selection clauses would not apply in this case if Plaintiffs are correct that the [contract's] forum-selection clause is permissive.") (internal citations and quotation marks omitted).

**DONE** and **ORDERED** this 7th day of May, 2024.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE